[Civ. No. 3694. Fourth Dist. July 29, 1948.]

HILBRON BRAGG et al., Respondents, v. MILTON A. SMITH et al., Appellants.

Monroe & McInnis for Appellants.

Vernon F. Bennett and Charles B. Provence for Respondents.

BARNARD, P. J.—This action for damages arose out of a collision between an empty Ford truck, owned by the defendant Smith and driven by his employee the defendant Trimble, and a loaded panel truck owned by the plaintiff Robbins and driven by the plaintiff Bragg. For convenience, we will refer to these drivers, respectively, as the defendant and the plaintiff.

The collision occurred at about 7:40 a. m. on a clear day in June on U. S. Highway 101, about a mile north of Encinitas and within the intersection formed by Highway 101 with a dirt street known as Marcheta. At this point Highway 101 is straight and level, runs north and south, and is divided into four 10-foot lanes with a dirt shoulder along its easterly side which varies from 5 to 7 feet in width. To the east of this shoulder is a row of trees. Marcheta, some distance to the east of Highway 101, is from 22 to 27 feet wide but as it meets the highway it fans out with gradually curving curbs, particularly on its south side, so that it is about 100 feet wide as it joins the east side of the highway. The defendant was very familiar with this intersection, having passed along this part of the highway many times a day for several months.

On the day of the accident the plaintiff was driving north on the easterly of the two lanes provided for northbound traffic at a speed of from 40 to 45 miles an hour, and the defendant was following him in the same lane at about the same speed. The plaintiff had picked up a Marine some distance down the road and as they were approaching Marcheta, the Marine asked to be let off at that intersection. The plaintiff looked in his rear view mirror and seeing nothing gave a slow-down and stop signal with his hand and started to slow down, with the intention of stopping immediately north of the intersection. He traveled 200 to 250 feet while this signal was showing, and was gradually edging over toward his right-hand side of the road. He was going about 5 miles an hour and his right front wheel was just coming over the shoulder of the road when the collision occurred. His truck was knocked forward and to the east, where it ran into the second tree north of the intersection. The plaintiff was knocked unconscious and suffered some injuries, and the car was badly damaged.

It appears, without conflict, that the impact occurred in the east lane of the highway at a point which is about two-thirds of the way through the actual intersection of the highway with the easterly branch of Marcheta, but which is slightly south of what would be the center line of Marcheta if that road did not fan out as it joins the highway. It was 38 feet from the point of impact to the rear end of plaintiff's truck as it rested against the tree. The defendant's truck left dual skid marks on the pavement, entirely in the east lane of the highway, but veering slightly to the left at the north,

end. These skid marks extended from the point of impact southerly for a distance of 60 feet, to a point about opposite the point where the fanned-out entrance to Marcheta begins. The damage to the two vehicles shows that the right half of the front of the defendant's truck collided with the left half of the rear of the plaintiff's truck.

The court, sitting without a jury, found that the defendant was negligent in the operation of his truck on this occasion and that the plaintiff was also guilty of negligence which would otherwise have amounted to contributory negligence. It was then found that the defendant had the last clear chance to avoid the collision, that he negligently failed to take advantage of this last clear chance, and that the collision proximately resulted from his negligence and failure to use ordinary care to avail himself of a last clear chance to avoid the collision. Judgment was entered awarding, as against both defendants, $1,210 to plantiff Robbins for damage to his truck and $2,734.20 to plaintiff Bragg for his personal injuries. From this judgment the defendants have appealed.

The sole point raised is that the doctrine of last clear chance was inapplicable under the circumstances here appearing, and that the court erred in applying that doctrine and in entering a judgment based thereon. While, as a factual matter, it could well have been found that the plaintiff was not negligent the court's finding to the contrary is supported by some evidence and it cannot be said that the question was entirely one of law. It must be assumed that the plaintiff was also negligent, and the question presented is as to whether or not the other necessary elements of the doctrine in question here appear.

The defendant's theory at the trial was that the plaintiff had passed him shortly before the accident, had come back into the east lane when about 100 feet ahead of his truck and had then abruptly slowed down, and that the defendant could not turn to his left because a third car was then passing in the second lane and could not turn to his right into Marcheta because the plaintiff's truck was in his way. The court believed the plaintiff's testimony that he had not just passed the defendant's truck and that he had at all times material here been in the east lane. This was corroborated by a witness who was standing on the opposite side of the highway at the time, and this witness rather thoroughly exploded the theory that a third car interfered with the defendant's turning into the second lane.

The main contentions on this appeal are that the last clear chance doctrine was not applicable until the plaintiff arrived at a point where he could no longer escape injury by exercising ordinary care, and then not unless the defendant had a clear chance to avoid the accident after he actually knew that the plaintiff was in a position of danger. It is argued that the plaintiff could have escaped injury up to the last by observing in his rear view mirror that the defendant was approaching and by then stepping on his accelerator. ■ It is well settled that the fact that the negligence of the injured party continues up to the moment of the injury is not in itself sufficient to defeat the application of the doctrine. In fact, the continuing negligence of the plaintiff is present in all last chance cases. (*Girdner* v. *Union Oil Co.*, 216 Cal. 197 [13 P.2d 915].)

The contention that the defendant did not actually know that the plaintiff would not get out of his way and was in a position of danger, in time to have had a clear chance to avoid the collision, is based on the argument that the plaintiff stopped suddenly in front of him, that he had only a split second in which to act, and that he could not have turned either to his right or to his left because a vehicle was in his way in both directions. The question presented is, at best, one of fact rather than one of law. There is evidence that the plaintiff did not stop abruptly and that he was slowing down over a space of several hundred feet. Even the defendant, although his version of the happenings just prior to the collision was not accepted by the court, testified that when the plaintiff was about 100 feet in front of him he observed him pulling over to his right. After the defendant says he saw plaintiff edging to the right the defendant had 150 to 200 feet to go before reaching the point of the impact, according to his own testimony. The evidence indicates that the defendant had a considerable opportunity to observe that the plaintiff's truck was slowing down. The evidence is also sufficient to indicate that the defendant actually knew, when he was at least 100 feet away, that the plaintiff was in a position of danger. After he applied his brakes sufficiently to leave skid marks on the pavement his truck traveled 60 feet, and there was necessarily a reaction period after he observed the imminence of the danger before he could get his brakes into effective operation. It is admitted in appellants' brief that this truck would go some 45 or 49 feet during this period.

After knowing that the danger of a collision was imminent he continued in practically a straight line when, as clearly appears from the evidence, he could easily have avoided the accident by turning to his left in the second lane, or by turning to his right into the broad entrance to Marcheta. There was nothing in the way of his turning to his left in the second lane, as amply shown by the evidence, and he was under no necessity of making a sharp right angle turn into Marcheta, as argued in the brief. As the trial judge said in his oral opinion, ''The approach to Marcheta Street was such that the opportunity to turn into that street by a very gradual turn indeed was fully open. Now then, the evidence shows that the point where the skid marks started was approximately abreast of the southernmost point of the fan-out which Marcheta Street makes in coming into Highway 101. It would, therefore, appear that after realizing the imminence of the danger, and that it was wholly improbable either by reason of being oblivious to it or by reason of decrease of his speed, that Bragg could avoid an accident, Trimble had a clear opportunity without making any sharp turn to have turned to his right up Marcheta Street and avoided the whole difficulty.''

The defendant actually discovered the situation and realized the danger while it was still possible to avoid the collision by the use of ordinary care on his part. The opportunity was clearly open to him to avoid the accident by turning either to his right or to his left. While it may be true that he had to act quickly, it is not unusual for a motorist to be confronted with such a necessity and it cannot be said, as a matter of law, that a distance of approximately 100 feet was not sufficient to enable him to have a clear chance to slightly alter the course of his vehicle. Common experience is to the contrary, and the evidence here is sufficient to support the court's finding that a last clear chance to avoid the accident existed after the defendant actually knew that the plaintiff was in a position of danger from which he would be unable to escape by any action which he could then take. (*Cady* v. *Sanford,* 57 Cal.App. 218 [207 P. 45].)

The dispute here is as to the applicability of certain well-established principles of law and not as to what those principles are, and it is unnecessary to review the many cases cited.

The judgment is affirmed.

Marks, J., concurred.