[Civ. No. 16415. Second Dist., Div. One. Nov. 17, 1948.]

WALDO DE VORE, Appellant, v. JAMES WILLIAM FARIS et al., Respondents.

Marcus, Rabwin & Nash and Monroe R. Rubin for Appellant.

Jones, Thompson & Kelly for Respondents.

YORK, P. J.—This is an appeal by plaintiff from a judgment entered on the verdict of the jury in open court in favor of defendants, in an action to recover damages for personal injuries sustained by plaintiff when he was struck by defendants' automobile.

The only question raised on this appeal is whether the court committed prejudicial error in its refusal to give to the jury instructions requested by plaintiff relating to the doctrine of the last clear chance.

The circumstances out of which the instant litigation arose are the following:

Appellant and his wife were returning to their home in Thermal, California, from Los Angeles, on October 19, 1946, and at about 6 p. m. appellant parked his automobile opposite a fruit stand on Arroyo Road just east of the Kellogg Arabian Farm near Pomona. Arroyo Road is a four-lane, straightaway highway at this point with a 5 or 6 foot safety area in the center which divides east and west bound traffic.

Appellant testified it was dark at the time and that traffic was not heavy; that he got out of his car and waited for four or five cars to pass traveling east on the highway with headlights burning; that he then walked across the south half of the road to the safety or dividing area, where he stopped and waited a few seconds to permit about three westbound cars to pass; that he then proceeded across the north half of the highway to the fruit stand where he bought some bananas. In the meantime, Mrs. De Vore joined him and after making some further purchases, they returned safely to their parked car.

Appellant further testified that he had trouble starting his car, whereupon he got out and raised the hood, but it was too dark for him to see very well, so he again started across the highway to the fruit stand to borrow a flashlight. Said witness stated that he stood by his car and waited for eastbound traffic to pass; that he reached the safety zone in the center of the highway; saw lights coming from the east and waited for three westbound cars to pass; that he then looked to the east, saw no more cars and started across the north half of the highway; that when he reached the white line in the center of said north half separating the two westbound lanes of traffic, he again looked to the east; that he "didn't see anything com-

ing so I went on across''; that when he had just about cleared the north half of the highway, with his left foot on the asphalt shoulder and his right foot lifted to take the last step off the highway, his right leg was struck below the knee by an automobile being driven in a westerly direction by respondent James William Faris, nephew of respondent Mary Faris, owner of the car. In the impact, appellant's right foot was partially severed a few inches above the ankle, necessitating the amputation of the right foot at a point a few inches below the knee. In addition appellant suffered lacerations of the head, concussion, and injuries to his shoulders and chest.

Appellant further testified that he saw no headlights and heard no horn before he was struck and rendered unconscious.

On cross-examination, appellant stated that he heard no sound of an engine of an automobile just before he was struck; that his hearing and eyesight were good; that he was 50 years and 5 months of age. Further that the highway as it extended to the east of the scene of the accident was flat and level; that one could see to the east at the point in question a quarter mile or more; that there were no buildings or improvements of any kind from the bottom of Kellogg Hill until a point a quarter of a mile or so east of the scene of the accident, other than the fruit stand; that it is an open country road out there. In answer to the question: ''Mr. De Vore, from the time you started from this separation of the divided highway up to the point the accident occurred, you continued to walk and were in motion all that time, were you not?'' he replied: ''I was in motion all that time, yes, sir.''

The witness DeHaan, owner of the fruit stand, testified that immediately after the impact, appellant was lying on the ''edge of the road''; and on the morning after the accident he saw blood and a small piece of bone on the edge of the highway near the shoulder.

Mrs. De Vore testified that she watched appellant as he walked across the road to borrow the flashlight, and noticed that he stopped in the center safety zone to let two cars traveling westerly toward Los Angeles pass by, whereupon appellant ''proceeded to the second lane where he didn't stop long. He hesitated.'' That this was at a point (D-3) on the white line in the north half of the road; that the witness looked east from where she sat in the parked car and saw no cars coming; that appellant was then ''in the clear''; that she glanced away and the next thing she heard was the impact and a scream; that she looked and saw appellant lying on the ground, and the car

going ahead, "going very fast"; that she saw no tail light on the car as it proceeded west about a block from the fruit stand at which place she later saw it parked.

On cross-examination, Mrs. De Vore was asked: "How long did he stop at D-3 (the white line in the middle of the north half of the highway)?" To this question, the witness replied: "I would say just long enough to be sure there were no cars coming." . . . Q. By Mr. Thompson: . . . But you did see him actually pause or hesitate and stop for two seconds? A. I saw him pause and hesitate there. Q. Then it is not true that he continued to walk from the center of the roadway up to the point of the impact, from your observation? A. No, sir. . . . Q. And you saw him pausing out there for two seconds on that single line, is that correct? A. I can't be sure whether it was one or two seconds, but he paused long enough to look up and ascertain whether there were cars coming."

James William Faris, the driver of the car, testified he was 18 years of age at the time of the accident, a student at Fairfax High School; that about 5:30 p.m. of October 19, 1946, he was on his way home to Los Angeles; that a friend, Bob Olson, was with him; that he left his companion at his home in Ontario about 5:45 p.m.; that the witness got out of the car at the Olson residence and looked at some football scores with the aid of the headlights of his car; that it was dark and said headlights were then burning. That he then proceeded on his way alone, and as he approached the scene of the accident he was traveling west in the most northerly lane of the highway at a speed of from 45 to 50 miles per hour; that traffic was heavy, and as he got near the fruit stand there was a car traveling immediately to his rear in the next lane toward the center of the highway; that he could see the lights of that car in his rear view mirror; that he observed no pedestrians walking north or south across the road; that the left wheels of his car were about a foot north of the white line dividing the north half of the highway as he approached the fruit stand; that he heard the horn of the car behind him once before the impact.

Respondent Faris further testified that he did not see appellant at all, but he felt the impact, came to a gradual stop and parked his car about 300 feet west of the point of impact; that he got out of the car, went back and found appellant lying on the road "his shoulders and head were half on the pavement and his legs were on the shoulder"; that there was blood on the pavement. That he remained at the scene until the officers

arrived. On cross-examination respondent Faris testified that his lights were on low beam.

Highway Patrol Officer Elliot, who, with his brother Officer Collier, investigated the accident, testified that when they arrived they found appellant lying on the shoulder of the highway; that about 40 feet east of that point said witness saw a spot of blood; that an examination of respondents' car disclosed a place on the right side of the front bumper where the dust had been removed "which could have been removed by striking a person's leg"; that there was no damage to the car by bending, denting or crashing in anywhere; that said witness asked respondent Faris how his car came to be parked so far from the point of impact, to which said respondent replied that the reason he stopped there was because he did not know that he had hit anyone; he thought first he had hit an animal, or a dog or some animal or something, and that at first he wasn't going to stop, and later he decided to go back and see if it was an animal, to see if it was injured and see if he could contact the owner of the animal; that that was the reason for the distance of his car.

This witness also testified that Mrs. De Vore made a statement to him enroute to the hospital shortly after the accident, to the following effect: "She stated that her husband started to cross the road and she was in the front seat of the car, and after he got part way across the highway, she said she was nervous and saw these cars, and that—and she was afraid that he might get hit, or something, and she said that, 'I put my head down and sort of covered my eyes', and then she said she heard a thud, and then she said, 'I screamed', or something to that effect, and she knew her husband had been hit." On cross-examination of Officer Elliot the following took place: "Q. Now, with reference to the statement that Mrs. De Vore made to you, did she tell you, when she made that statement, that she was directing her attention to any particular car that she was afraid of? A. No, no particular car. She noticed a lot of automobiles which appeared to be going fast and she was nervous and scared, she stated, when she saw her husband going across the road, and afraid he might get hit."

"The elements necessary to justify the court in instructing the jury on the doctrine of last clear chance are well stated in the frequently cited case of *Girdner* v. *Union Oil Co.*, 216 Cal. 197, 202 [13 P.2d 915]: 'That plaintiff has been negligent and, as a result thereof, is in a position of danger from which he cannot escape by the exercise of ordinary care; and this

includes not only where it is physically impossible for him to escape but also in cases where he is totally unaware of his danger and for that reason unable to escape; that defendant has knowledge that plaintiff is in such a situation and knows, or in the exercise of ordinary care should know, that plaintiff cannot escape from such situation, and has the last clear chance to avoid the accident by exercising ordinary care, and fails to exercise the same, and the accident results thereby, and plaintiff is injured as the proximate result of such failure.' There must be substantial evidence before the court to establish all of these elements or the doctrine is not applicable." (*Keller* v. *Arden Farms, Inc.*, 59 Cal.App.2d 506, 508 [139 P.2d 47].)

Appellant urges that by conceding the first element, i. e., that he was negligent, all "six elements" of the doctrine were present in the evidence introduced at the trial, thereby entitling him to the requested instructions.

With respect to the element that "defendant had actual knowledge of the plaintiff's perilous position," attention is directed to the case of *Rasmussen* v. *Fresno Traction Co.*, 15 Cal.App.2d 356, 362 [59 P.2d 617], where it was stated: "While it has always been held that the rule did not apply unless the defendant actually knew that the plaintiff was in a position of danger, it has more recently been held that the jury is not required to take the defendant's word that he did not see but that, under proper circumstances, the jury may find that he did see, and that the jury, having found on proper evidence that he actually saw, may infer that he should then have known that the plaintiff could not escape." In this connection, appellant contends that the uncontradicted facts support the position that respondent driver actually did see appellant, for the reasons that: (1) the place where the accident occurred was on a level, straight-away portion of the highway; (2) there was nothing to obstruct the driver's view for a quarter of a mile each way; (3) appellant had walked circumspectly across the highway until he had reached the extreme edge and (4) was in the act of taking his last step to clear the same; (5) respondent claimed his headlights were burning and that he was looking straight ahead; (6) appellant walked across the line of travel of respondent's car and was struck by the right end of the front bumper, indicating that appellant had crossed the highway in full view of the headlights of respondent's car; (7) respondent did nothing to avoid the accident: he sounded no horn, did not apply his

brakes, and traveled 300 feet beyond the point of impact before he came to a stop.

With respect to the element of the defendant's knowledge of plaintiff's predicament, it was stated in *Gillette* v. *City of San Francisco*, 58 Cal.App.2d 434, 442 [136 P.2d 611]: ". . . the courts have held repeatedly that it is a question of fact for the jury to determine from all the circumstances presented by the evidence whether the defendant actually knew of the plaintiff's peril; and that notwithstanding there may be a total absence of any positive testimony that the defendant actually knew of plaintiff's danger, and even though the defendant definitely denies seeing the plaintiff at all, the doctrine of the last clear chance may be invoked and applied where the facts and circumstances are such as would justify the jury in finding that despite the defendant's denial of knowledge or the absence of direct testimony on the subject, he was actually aware of plaintiff's danger in time to avert the accident; in other words, that he 'must have known' of plaintiff's danger. For example, in the case of *Hoy* v. *Tornich, supra,* [199 Cal. 545 (250 P. 565)] it was contended that since the uncontradicted evidence showed that the defendant did not see the plaintiff until the very moment of the accident, the doctrine of the last clear chance was inapplicable. The court held otherwise, saying: 'If the defendant in this case was looking straight ahead, as he testified that he was, he must have seen the plaintiff.' "

In 2 California Jurisprudence, Ten-Year Supplement, page 189, section 128 (Automobiles), it is stated: "Again, where it appears that the victim was in the path of the vehicle and plainly visible to the driver, the trier of facts may properly conclude that the driver 'must have seen' him. Hence, the jury may be instructed as to the Doctrine of Last Clear Chance although there is no direct evidence that the defendant actually knew of the victim's presence in the roadway, and indeed, although he may have testified that he did not see the victim in time to avert the collision."

■ Respondents urge that there is no evidence that the driver, James William Faris, saw appellant at any time before he was struck, and in any event that the accident occurred with such swiftness that respondent Faris had no clear chance to avoid it, hence the doctrine of last clear chance is not applicable.

In this connection they cite the case of *Bagwill* v. *Pacific Electric Ry. Co.*, 90 Cal.App. 114 [265 P. 517], wherein it

was stated at page 121: ''Certainly the doctrine of last clear chance never meant a splitting of seconds when emergencies arise. There seems still to be some misconception of this doctrine of last clear chance. It was not devised as a last resort to fasten liability on defendants. Like the body of the law of negligence, to which the doctrine is appended, the test remains as that of ordinary care under all of the circumstances. The law in many of its workings indicates great charity and solicitude for individual rights. It says to a negligent plaintiff that in spite of his lack of caution he will be protected against wanton, wilful or avoidable harm. But, on the other hand, it penalizes no innocent person. We are not to tear down the facts of a case and rebuild the same so that, by a trimming down and tight-fitting operation, something can be constructed upon which may be fastened the claim of last clear chance. The words mean exactly as they indicate, namely last *clear* chance, not possible chance.''

In the more recent case of *Berton* v. *Cochran,* 81 Cal.App.2d 776, 779 [185 P.2d 349], it was stated: ''The question is whether an instruction on the doctrine of the last clear chance should have been given. 'The doctrine of last clear chance presupposes that both parties were guilty of negligence; that there must be an opportunity, a *clear chance,* a situation established by substantial evidence, and that the defendant saw or knew of plaintiff's perilous position and could have avoided the collision but, having such opportunity, did not do so.' (*Dalley* v. *Williams,* 73 Cal.App.2d 427, 433 [166 P.2d 595].) The evidence shows, according to defendant's testimony, that he was 10 feet from the driveway when he first saw the boy, and shows, according to defendant's alleged statement to the officers, that he was 30 feet from the driveway at that time. Since the driveway was 10 feet wide, it appears from the testimony just referred to that the defendant traveled either 15 or 35 feet after he first saw the boy and before the collision. . . . and in the view most favorable to plaintiff, the defendant traveled 43 feet after he first saw the boy and before the collision, and if defendant traveled at the rate of 37 feet a second, the collision occurred in less than a second and a half after he first saw the boy. The defendant testified that the collision occurred approximately a second and a half after he first saw him. . . . Irrespective of whether the defendant was 10 feet or 30 feet from the driveway when he first saw the boy, or whether defendant traveled 15, 23, 35 or 43 feet, after he first saw the boy and before the collision, it appears that the

collision occurred within a second or two after defendant saw him. In the case of *Bagwill* v. *Pacific Electric Ry. Co.,* 90 Cal.App. 114 [265 P. 517], the court said at page 121: 'Certainly the doctrine of last clear chance never meant a splitting of seconds when emergencies arise. . . . Like the body of the law of negligence, to which the doctrine is appended, the test remains as that of ordinary care under all of the circumstances. . . . The words mean exactly as they indicate, namely, last *clear* chance, not possible chance.' In *Dalley* v. *Williams, supra,* [73 Cal.App.2d 427 (166 P.2d 595)] it was said at page 432: 'The doctrine presupposes time for effective action and is not applicable where the emergency is so sudden that there is no time to avoid the accident.'

"Under any view of the evidence herein as to the distance defendant traveled after he saw the boy, it is clear that the emergency arose suddenly and that there is no substantial evidence that defendant had time to avoid a collision with the fast moving bicycle. The doctrine of the last clear chance is not applicable herein and it was not error to refuse to give an instruction on that doctrine. 'The giving of an instruction submitting an issue on the last clear chance doctrine, where there is not sufficient evidence to justify the submission, is reversible error.' (*Dalley* v. *Williams, supra,* p. 437.) . . . A defendant 'cannot be held liable under the last clear chance rule, upon the theory that he would have discovered the peril but for remissness on his part.' (*Dalley* v. *Wililams, supra,* p. 436.)"

Appellant in his brief argues as follows: "Let us assume that the plaintiff was walking across the highway at a normal gait of four miles per hour. The defendant admitted going 40 to 45 miles per hour, which would mean approximately 60 feet per second. The plaintiff was traveling approximately six feet per second. While the plaintiff was crossing the north portion of the highway, which he had practically cleared, about 3½ seconds elapsed. During that time the defendant traveled on a straight-a-way, level highway for about 200 feet and in those 200 feet defendant did nothing to avoid the accident, although plaintiff was in full view of the defendant's headlights."

Accordingly, appellant was in a perilous position for only a second or two at the most. When he was on the white line in the middle of the north half, appellant testified he looked to the east and saw no automobiles coming; that he heard no sound of a motor or a horn, whereupon he pro-

ceeded the short distance across the northerly lane of the north half of the highway to the extreme edge thereof, when he was struck. Mrs. De Vore, who was watching her husband, stated she saw appellant hesitate on the white line in the center of the north half of the highway, and that she then looked to the east "to see if there were any cars coming, and I didn't see any." Respondent driver of the car testified he did not see appellant at all, but felt the impact and came to a gradual stop.

In view of the foregoing, it appears that the evidence herein is not sufficient to establish all of the elements of the doctrine of the last clear chance in that the accident occurred so quickly that respondent James William Faris did not have a last clear chance to avoid the same.

For the reasons stated, the judgment is affirmed.

Doran, J., and White, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 13, 1949.