[L. A. No. 22246. In Bank. July 14, 1952.]

DESSIE S. RODABAUGH et al., Appellants, v. PAUL TEKUS, Respondent.

Elmer R. Guy, Hirson & Horn and Theodore A. Horn for Appellants.

Robert A. Cushman for Respondent.

SPENCE, J.—Plaintiffs, the widow and adult sons of Andrew C. Rodabaugh, brought this action to recover damages for the latter's death as a result of an automobile collision. Following the denial of defendant's motion for a directed verdict, the jury returned a verdict in plaintiffs' favor for $2,500. Defendant then moved for judgment notwithstanding the verdict. The trial court granted this motion, and judgment was entered in defendant's favor. On this appeal, plaintiffs challenge the correctness of this ruling.

Plaintiffs conceded in the trial court and now concede that the deceased was guilty of negligence in the operation of his own automobile, and that his negligence contributed to his death. However, the trial court instructed the jury on the doctrine of last clear chance. Defendant maintains that the evidence was insufficient to sustain plaintiffs' recovery on that theory, and that the trial court properly so determined in granting his motion for judgment notwithstanding the verdict. Viewing the evidence in the light most favorable to plaintiffs, with every legitimate inference drawn in their favor (*Neel* v. *Mannings, Inc.*, 19 Cal.2d 647, 649-650 [122 P.2d 576]; *Champion* v. *Bennetts*, 37 Cal.2d

815, 820 [236 P.2d 155]; *Shannon* v. *Thomas,* 57 Cal.App.2d 187, 192-193 [134 P.2d 522]), defendant's position must nevertheless be sustained.

There is no material conflict in the evidence. The only eyewitnesses were defendant and his passenger. Plaintiffs called defendant under section 2055 of the Code of Civil Procedure, and they base their claims upon the testimony elicited from him. Defendant called his passenger as a defense witness, and his testimony substantially corroborated that of defendant.

The accident occurred in Orange County about 7:20 a. m. on August 24, 1948, at the intersection of Bolsa Street, an east and west state highway, and Golden West Avenue, a county road running north and south. Both roadways are approximately 20 feet wide and are paved, but with soft, sandy shoulders on both sides of the pavement. There are ditches on either side of Golden West Avenue. The view of the intersection is unobstructed from all sides, and at the time of the accident, there was a slight fog with visibility about 500 feet. Bolsa Street, on which defendant was traveling, is a through highway, and at the north and south approaches to it from Golden West Avenue there are regulation stop signs. (Veh. Code, § 471.) In addition, the word "stop" and a white stop line are painted across the northbound traffic lane of Golden West Avenue a few feet south of Bolsa Street. There also is a wavering white line crossing and recrossing the white center line of Golden West Avenue for approximately 300 feet south of the intersection.

Decedent was driving north on Golden West Avenue at 35 to 40 miles per hour, and defendant was driving west on Bolsa Street at approximately 40 miles per hour. When defendant first observed decedent, each of the automobiles was approximately 500 feet from the intersection. Decedent subsequently failed to heed the stop warnings, and continued into the intersection to the point of impact without slackening his speed.

Defendant testified that he continued to watch decedent's car; that when defendant was some 75 to 100 feet from the intersection and saw that decedent was not slowing down, he started to apply his brakes gently, thinking that decedent would probably stop; that as decedent approached, he appeared to be looking straight ahead and did not slacken his speed at any time before the impact occurred; that when decedent did not slow down, defendant applied his brakes

harder at about 75 feet from the intersection, and at a distance of 35 feet he slammed them on, leaving skid marks on the pavement. Defendant further testified that traveling at 40 miles per hour, he could have stopped his car in approximately 60 feet. Defendant did not turn to the right or left before the impact, and his car struck decedent's car on the right side at the rear door and wheel. The collision occurred in the northeast quadrant of the intersection. When the vehicles came to rest, decedent's car was in a ditch near the northwest corner of the intersection, some 39 feet from the point of impact, and defendant's car was some 25 feet west of said point facing east.

The parties are agreed on the necessary elements which must be present in order to warrant the application of the last clear chance doctrine. These elements were stated by this court in *Girdner* v. *Union Oil Co.*, 216 Cal. 197, 202 [13 P.2d 915], and were recently reiterated in *Selinsky* v. *Olsen*, 38 Cal.2d 102, 104 [237 P.2d 645], and *Peterson* v. *Burkhalter*, 38 Cal.2d 107, 109 [237 P.2d 977]. The real dispute between the parties here involves the question of whether there is any substantial evidence to meet all the essential requirements for the application of that doctrine. Plaintiffs contend that there is such evidence in the record before us. Defendant concedes that the evidence is sufficient to establish that decedent through his own negligence placed himself in a position of danger, and that prior to the occurrence of the collision defendant had actual knowledge of that fact. Defendant contends, however, that there is no substantial evidence to show that *after* defendant acquired knowledge of decedent's perilous situation, he had a *clear* chance to avoid the collision by the exercise of ordinary care or that he failed to exercise such care.

In discussing the contentions of the parties, it is important to bear in mind that the mere fact that the evidence in a given case may be sufficient to sustain a finding of negligence on the part of a defendant does not justify the conclusion that such evidence is sufficient to permit the application of the last clear chance doctrine. Negligence is but one of the several elements involved in said doctrine, and reliance on the doctrine presupposes negligence on the part of both parties. In addition, however, there must be substantial evidence to show that defendant had a *last clear chance* to avoid the accident. (*Dalley* v. *Williams*, 73 Cal.App.2d 427, 433 [166 P.2d 595]; *Berton* v. *Cochran*, 81

294

Cal.App.2d 776, 779[185 P.2d 349]; *De Vore* v. *Faris*, 88 Cal.App.2d 576, 583 [199 P.2d 391].)

We may assume without deciding that there is sufficient evidence to sustain a finding of some negligence on the part of defendant, despite the fact that he was traveling on a through highway and was entitled to assume until the contrary was apparent, that decedent would obey the law and would not drive his car past the stop sign directly into the path of defendant's car. (Veh. Code, §§ 552, 577; *Dickinson* v. *Pacific Greyhound Lines*, 55 Cal.App.2d 824, 827 [131 P.2d 401].) However, the evidence is insufficient to support a finding that after defendant discovered decedent's peril, he had a last clear chance to avoid the collision. The fact that defendant saw that decedent was looking straight ahead while decedent was traveling approximately 500 feet in approaching the intersection does not establish that decedent was in a position of danger this entire distance. Decedent was not in a position of danger until he arrived at a point at which he could no longer stop or slow down in time to avoid a collision. (*Dalley* v. *Williams, supra,* 73 Cal.App.2d 427, 435; also, *Young* v. *Southern Pac. Co.*, 182 Cal. 369, 380-381 [190 P. 36].) Defendant had the right to assume that decedent possessed normal faculties, and that he saw the stop warnings which were directly within the range of his vision. (*Folger* v. *Richfield Oil Corp.*, 80 Cal.App.2d 655, 660-661[182 P.2d 337].)

Plaintiffs set forth the respective speeds and distances found in the testimony, and then argue by a series of mathematical calculations that such evidence is sufficient to support a finding that defendant had a last clear chance to avoid the accident. In our view this argument is without merit. Under any view of the testimony it is clear that both cars were approaching the intersection at approximately the same time and at approximately the same speed. Disregarding for the moment the fact that defendant was traveling on the through highway and decedent was traveling on a road which was plainly marked with stop warnings, it is apparent that this case presents the picture of one of the usual types of intersection collisions between two rapidly moving vehicles. It has been frequently stated that the last clear chance doctrine is ordinarily inapplicable under such conditions. (*Poncino* v. *Reid-Murdock & Co.*, 136 Cal.App. 223, 232 [28 P.2d 932]; also *Johnson* v. *Sacramento Northern Ry.*, 54 Cal.App.2d 528, 532 [129 P.2d 503]; *Dalley* v. *Wil-*

*liams, supra,* 73 Cal.App.2d 427, 436; *Folger* v. *Richfield Oil Corp., supra,* 80 Cal.App.2d 655, 660; *Berton* v. *Cochran, supra,* 81 Cal.App.2d 776, 781; *Allin* v. *Snavely,* 100 Cal. App.2d 411, 415 [224 P.2d 113].)

As was said in *Poncino* v. *Reid-Murdock & Co., supra,* at page 232: "Like many other cases involving collisions between moving vehicles, the accident may be said to have happened within the twinkling of an eye after the first indication of danger. While the doctrine of last clear chance has been applied in certain exceptional cases involving collisions between moving vehicles, we are of the opinion that it should not be applied to the ordinary case in which the act creating the peril occurs practically simultaneously with the happening of the accident and in which neither party can fairly be said to have had a *last clear chance* thereafter to avoid the consequences. To apply the doctrine to such cases would be equivalent to denying the existence of the general rule which makes contributory negligence a bar to recovery."

Certain phases of plaintiffs' argument should be mentioned. Plaintiffs rely heavily upon defendant's testimony to the effect that he could have stopped within a distance of 60 feet while traveling at 40 miles per hour. There is no other testimony in the record relating to the distance required to stop a car by the application of brakes. As plaintiffs accept this testimony, it appears therefrom that decedent did not reach a point of danger from which he could not extricate himself until he was within 60 feet of the path of defendant's car; and that defendant could assume that decedent would obey the stop sign until decedent had arrived at a point within such distance of 60 feet. A vehicle traveling at a speed of 40 miles per hour travels approximately 60 feet per second, and plaintiffs do not dispute the fact that defendant's total time for reaction and effective action after discovering decedent's perilous situation was necessarily somewhere between 1¼ and 1¾ seconds. Plaintiffs' calculations do not sustain their position. As was said in *St. Louis S.W. Ry. Co.* v. *Simpson,* 286 U.S. 346, at page 351 [52 S.Ct. 520, 76 L.Ed. 1152]: "Calculations so nice are unavailing to prove anything except the unity of the whole transaction. The several acts of negligence were too closely welded together in time as well as in quality to be viewed as independent."

In *Poncino* v. *Reid-Murdock & Co., supra,* 136 Cal.

App. 223, at page 227, it was further said: "In other words, it is not enough to relieve a plaintiff of his own negligence that the defendant may have had *a chance* to avoid the accident, but defendant must have had the *last chance* and also had a *clear chance* to do so by the exercise of *ordinary* care. That he should have had the *last chance* implies that his chance to avoid the accident must have come later in point of time than any similar chance on the part of the injured person. That he should have had a *clear chance* implies that he must have had more than a *bare possible chance* to avoid an unexpected peril created practically simultaneously with the happening of the accident by the negligence of the injured party."

Plaintiffs also argue that defendant acted negligently in not turning to the right or left to avoid the collision. We have heretofore assumed, solely for the purpose of this discussion, that there was sufficient evidence to sustain a finding of some negligence on the part of defendant. As above indicated, this does not suffice to bring into operation the last clear chance doctrine. ▉▉▉ In passing it may be stated, however, that defendant was admittedly traveling on a narrow through road 20 feet in width with soft shoulders on either side; that he was approaching a narrow, intersecting road with ditches on either side thereof; and that decedent was admittedly negligent in not obeying the stop sign and in proceeding directly across defendant's path without diminishing his speed of 35 to 40 miles per hour. Plaintiffs fail to indicate in which direction they believe that defendant should have attempted to turn under these circumstances. As we view the evidence on which plaintiffs rely, it was sufficient to warrant the application of the imminent peril doctrine in favor of defendant (*Peterson* v. *Devine,* 68 Cal.App.2d 387, 392-393 [156 P.2d 936]; *Wilkerson* v. *Brown,* 84 Cal. App.2d 401, 408 [190 P.2d 958]), but was insufficient to warrant the application of the last clear chance doctrine in favor of plaintiffs.

Plaintiffs cite and rely upon certain decisions, in addition to those heretofore mentioned, in which the last clear chance doctrine has been applied. (*Bonebrake* v. *McCormick,* 35 Cal.2d 16 [215 P.2d 728]; *Center* v. *Yellow Cab Co.,* 216 Cal. 205 [13 P.2d 918]; *Bragg* v. *Smith,* 87 Cal.App.2d 11 [195 P.2d 546]; *Root* v. *Pacific Greyhound Lines,* 84 Cal. App.2d 135 [190 P.2d 48]; *Gillette* v. *City of San Francisco,* 58 Cal.App.2d 434 [136 P.2d 611]; *Yates* v. *Morotti,* 120

Cal.App. 710 [8 P.2d 519].) Many of these cases have presented close questions concerning the sufficiency of the evidence to warrant the application of the doctrine, but they are all distinguishable on their facts. In none of the cited authorities was a through highway involved nor was there such a relation between the time, distance and speed factors as is found in the present case. The language used in *Bagwill* v. *Pacific Electric R. Co.*, 90 Cal.App. 114, at page 121 [265 P. 517], is singularly applicable here: "Certainly the doctrine of last clear chance never meant a splitting of seconds when emergencies arise. . . . We are not to tear down the facts of a case and rebuild the same so that, by a trimming down and tight-fitting operation, something can be constructed upon which may be fastened the claim of last clear chance. The words mean exactly as they indicate, namely, last *clear* chance, not possible chance."

We therefore conclude that the record is devoid of substantial evidence to sustain the application of the last clear chance doctrine, and that it was error for the trial court to instruct the jury with respect thereto. (*Wallis* v. *Southern Pac. Co.*, 184 Cal. 662, 672 [195 P. 408, 15 A.L.R. 117]; *Palmer* v. *Tschudy*, 191 Cal. 696, 700-701 [218 P. 36].) The trial court therefore properly granted defendant's motion for judgment notwithstanding the verdict.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., and Traynor, J., concurred.

SCHAUER, J., Concurring.—In my view there appears no substantial and legally sound basis for distinguishing this case, in favor of a reversal here and an affirmance there, from *Peterson* v. *Burkhalter* (1951), 38 Cal.2d 107, 114 [237 P.2d 977]. In the interests of clarity of principle I think that the last cited case should either be followed or expressly overruled. Since I believe that the Peterson case is erroneous, as pointed out in my dissent (p. 114 of 38 Cal.2d), I would overrule it. With such further statement of grounds I concur in the opinion and judgment.

CARTER, J.—I dissent.

The majority opinion in this case is contrary to the authorities, usurps the function of the jury and makes serious inroads into the last clear chance doctrine.

It is held that the doctrine is inapplicable because defendant did not, as a matter of law, have a chance to avoid the accident by acting as a person of ordinance prudence. In addition to his ability to stop, which is demonstrated by the evidence, he could have swerved to the left and averted the collision. The evidence shows that both cars were traveling at about 40 miles per hour; that defendant saw the deceased 500 feet from the intersection; that when the latter was 30 feet from it defendant was 75 feet and decedent was looking straight ahead and did not slow down at all, obviously indicating to defendant that he would not stop at the stop sign. Yet defendant applied his brakes only lightly, not forcefully enough to stop his car and avoid a collision. The accident occurred in the northeast part of the intersection and decedent's car was struck at the left rear wheel and door. The highway was 20 feet wide. No other cars were on the highway. Defendant made no effort to swerve to the left to avert the collision which he plainly could have done. Thus, he had ample opportunity to avoid the collision either by stopping or swerving. It was for the jury to say whether as a man of ordinary prudence he should have followed one course or the other.

The majority opinion weighs the evidence and concludes that there was no last clear chance by such statements as, that defendant was entitled to assume decedent would stop at the stop sign (the circumstances justified the jury in concluding that he was remiss if he made such assumption) and that defendant was entitled to the imminent peril rule with respect to swerving (whether there was such peril and he acted as a man of ordinary prudence was an issue for the jury).

It is not the rule, as asserted by the majority, that the last clear chance rule does not apply where two moving vehicles are involved; the conclusion reached is contrary to the authorities in this state.

We said in *Selinsky* v. *Olsen*, 38 Cal.2d 102, 105, 106 [237 P.2d 645] : "It was for the jury to determine whether in the space of time involved he could have avoided the collision."

In *Bonebrake* v. *McCormick*, 35 Cal.2d 16 [215 P.2d 728], this court reversed the trial court for refusal to instruct on the doctrine where two moving vehicles were involved, decedent on a bicycle and defendant in a car following him and the decedent turned to the left in the path of the car.

In *Peterson* v. *Burkhalter*, 38 Cal.2d 107 [237 P.2d 977], the vehicles were both moving toward an intersection and

would arrive there at the same time. The plaintiff was not looking at defendant and a collision occurred. This court said (p. 113) : ". . . [T]here is ample evidence from which the jury could determine that a reasonably prudent man, knowing the facts of which Burkhalter was aware, should have foreseen that Peterson *might* not turn or stop his motor scooter. Under such circumstances, it was negligent for Burkhalter to proceed toward the intersection acting upon a contrary assumption. . . . Considering the evidence in the Poncino case [relied upon by the majority], it does not stand for the proposition that, as a matter of law, a defendant with two seconds within which to avoid an accident had no chance to do so. In a proper case, an appellate court might say that the defendant did not have a chance which amounted to a 'clear' one. But the rule should not be applied when the only evidence is to the effect that the defendant could have avoided the accident within the existing time and distance limitations.

"Burkhalter saw Peterson when 50 feet from the intersection. He estimated that he could stop his automobile within 10 or 15 feet. He did stop within 28 to 30 feet after the impact, and testified that he could have done so sooner. All of the evidence indicates that Burkhalter might have halted his automobile at a much less distance than 50 feet.

"Moreover, Burkhalter's testimony reveals that he made no attempt to avoid the accident by turning his automobile or sounding his horn. *It cannot be said, as a matter of law, that he did not have sufficient time in which to do something,* and the jury properly might have found that sounding his horn to attract the attention of Peterson would have constituted the exercise of reasonable care on his part to avert the accident." (Italics added.) That case is indistinguishable from the one at bar.

In *Center* v. *Yellow Cab Co.*, 216 Cal. 205 [13 P.2d 918], plaintiff, a pedestrian, was moving across the street not at a crosswalk and defendant was driving on the street when his car struck plaintiff. Plaintiff was not observing defendant's approach. It was held defendant had a last clear chance to avoid the accident by swerving, blowing his horn or stopping.

In *Girdner* v. *Union Oil Co.*, 216 Cal. 197 [13 P.2d 915], plaintiff drove across a main highway on a secondary crossroad looking away from defendant's car approaching the intersection on the main highway. Defendant drove his car into plaintiff's. This court pointed out that the trial court

found that the evidence (p. 200) "established the fact that when plaintiff approached and was proceeding across the path of the oil truck, and up to the time of the collision, he did not see and was totally oblivious of the approach of the truck, and the danger that confronted him; that defendant Elam first saw plaintiff's car some forty or fifty feet away from the intersection; that he saw plaintiff looking straight ahead, in an opposite direction, and not slowing the speed of his automobile; that Elam was traveling at a speed of twenty miles an hour and could have stopped his truck almost immediately, and within a distance of a few feet; that he had ample time and sufficient distance, at least twenty-five to thirty-five feet, in which to stop and avoid coming in contact with plaintiff's car, but failed to do so," and concluded that defendant could have avoided the collision by stopping, swerving or blowing his horn.

*Chappell* v. *San Diego etc. Ry. Co.*, 201 Cal. 560 [258 P. 73], involved a collision between two moving vehicles at an intersection of a street railway and street. The one on the tracks was a gas motor railway car and the one on the street an automobile. It appeared that defendant (operator of the railway car) could have stopped when he first saw the car approaching when 55 feet to 60 feet from the crossing. It appeared that plaintiff was approaching slowly and attempting to stop. The court said (p. 565): "The verdict must be taken as a finding that the defendant's car failed to stop as soon as it was *possible* for it to have done so in the exercise of due care and that the last act of negligence of the defendant was the proximate cause of the injury. *This it was the province of the jury to find under the instructions of the court relating to the doctrine of the last clear chance.*" (Italics added.)

*Podeszwa* v. *White*, 99 Cal.App.2d 777 [222 P.2d 683], while not involving the doctrine, is directly in point. Defendant approached an intersection at 40 miles per hour on a through highway and saw decedent's car approaching a stop sign at the intersection at 10 miles per hour and did not stop but continued across the highway. The court said (p. 779): "Manifestly by a very slight swerve of his truck he could have passed behind the coupé and avoided the accident. Furthermore, when he observed the coupé passing the boulevard stop sign and approaching the Orangethorpe pavement the application of his brakes would have slowed his truck sufficiently to allow the coupé to pass in front of him. The fact that the driver of the coupé did not make the boulevard stop as re-

quired by law (Veh. Code, §§ 552, 577) did not justify defendant in failing to reduce his speed or change the direction of his car in an effort to avoid the accident.''

The basic principle is that it is for the trier of the fact to determine whether defendant had a last clear chance to avoid the collision and that is true where the evidence is inconclusive or contradictory, or as stated : ''It is not improper to instruct the jury on the doctrine of 'last clear chance' when, *on any valid theory,* there is substantial evidence to support the application of that principle. (*Gardini* v. *Arakelian,* 18 Cal.App.2d 424, 430 [64 P.2d 181].) In the case entitled *Wheeler* v. *Buerkle,* 14 Cal.App.2d 368, 373 [58 P.2d 230], it was said that 'if the facts of a case do not bring the doctrine into play the court must so decide,' and if the facts be such that the doctrine *may be applied,* it is the duty of a trial judge to submit it to a jury by proper instructions, or to find upon it in the absence of a jury.'' (*Wright* v. *Los Angeles Ry. Corp.,* 14 Cal.2d 168, 178 [93 P.2d 135].) Here there are three theories sustained by the evidence that defendant could have avoided the accident; he could have stopped, swerved or sounded his horn.

In making the statement that the doctrine does not apply to two moving vehicles approaching an intersection the majority cites *Poncino* v. *Reid-Murdock & Co.,* 136 Cal.App. 223 [28 P.2d 932]. No citation of authority is made for that statement in the Poncino case. A hearing in this court was denied. As pointed out by this court in *Peterson* v. *Burkhalter, supra,* 38 Cal.2d 107, that case was based upon the proposition that plaintiff was aware of the danger rather than that defendant did not have an opportunity to avoid it; that was the only basis for distinguishing it from *Girdner* v. *Union Oil Co., supra,* 216 Cal. 197, and otherwise the case was in effect overruled as being out of line with the Girdner case.

*Johnson* v. *Sacramento Northern Ry.,* 54 Cal.App.2d 528 [129 P.2d 503], cited for the same proposition, cites in addition to the Poncino case, only cases dealing with *railroad crossing* collisions where the courts have been reluctant to apply the doctrine because of a feeling that a railroad company should not be expected to stop at crossings under any circumstances. Certainly that is not true of automobiles approaching intersections. The same is true of *Folger* v. *Richfield Oil Corp.,* 80 Cal.App.2d 655 [182 P.2d 337], *Dalley* v. *Williams,* 73 Cal.App.2d 427 [166 P.2d 595], *Berton* v.

*Cochran,* 81 Cal.App.2d 776 [185 P.2d 349], and *Allin* v. *Snavely,* 100 Cal.App.2d 411 [224 P.2d 113], which make no such statement. Moreover, as above seen, there are numerous decisions by this court applying the doctrine to moving vehicles.

There is no reason why it should not apply in such a situation considering the speed with which automobiles are now operated and the necessity for rapid reaction to avoid accidents. Here we have a person (defendant) approaching an intersection at 40 miles per hour. He sees another car approaching at the same speed on the crossroad and the driver of the car (decedent) does not observe him. When the other car was at least 50 feet from the stop sign defendant was no longer justified in assuming it would stop at the stop sign. It is not reasonable to suppose that the driver of the other car would at that point apply his brakes with full force and come to a shrieking stop. Hence when the other car was at that point the defendant had adequate opportunity to stop his car or swerve from its path to avert the collision.

What was said by the District Court of Appeal in *Bragg* v. *Smith,* 87 Cal.App.2d 11, at page 15 [195 P.2d 546], is pertinent here: ''The defendant actually discovered the situation and realized the danger while it was still possible to avoid the collision by the use of ordinary care on his part. The opportunity was clearly open to him to avoid the accident by turning either to his right or to his left. While it may be true that he had to act quickly, it is not unusual for a motorist to be confronted with such a necessity and it cannot be said, as a matter of law, that a distance of approximately 100 feet was not sufficient to enable him to have a clear chance to slightly alter the course of his vehicle. Common experience is to the contrary, and the evidence here is sufficient to support the court's finding that a last clear chance to avoid the accident existed after the defendant actually knew that the plaintiff was in a position of danger from which he would be unable to escape by any action which he could then take. (*Cady* v. *Sanford,* 57 Cal.App. 218 [207 P. 45].) ''

It should be remembered that the trial court denied a motion on behalf of defendant for a directed verdict and submitted the case to the jury under appropriate instructions applying the last clear chance doctrine, and the jury returned a verdict in favor of plaintiffs from which it must be implied that they determined as a fact that defendant had a last

clear chance to avoid the collision after perceiving that decedent was in a position of peril. The trial court then granted defendant's motion for judgment notwithstanding the verdict. Plaintiffs took an appeal from the judgment and the District Court of Appeal, Fourth Appellate District, by unanimous opinion prepared by Mr. Justice Mussell and concurred in by Mr. Presiding Justice Barnard and Mr. Justice Griffin reversed the judgment and remanded the case to the trial court with instructions to enter judgment in conformity with the verdict of the jury. ((Cal.App.) 238 P.2d 25.) The opinion of the District Court of Appeal contains a correct statement of the facts, is well reasoned and is supported by abundant authority. The following statement is contained in the concluding paragraph of the opinion: "We conclude that there was substantial evidence to support the findings of the jury and that the trial court erred in rendering a judgment notwithstanding the verdict."

From the foregoing it clearly appears that the trial judge was of the opinion that the last clear chance doctrine was applicable when he submitted the case to the jury and that the jury found the facts necessary to support a verdict in favor of the plaintiffs. Although the trial judge changed his mind after the verdict was returned, it was the unanimous opinion of the District Court of Appeal that the evidence warranted the submission of the case to the jury and that the question of whether or not the defendant had a last clear chance to avoid the collision was one of fact and not of law, and reversed the trial court.

The very recent case of *Pfingsten* v. *Westenhaver, ante,* p. 12, at page 19 [224 P.2d 395], reannounced the well settled rule that "Where different conclusions may reasonably be drawn from the evidence by different minds the trial court's (jury's) findings are not to be disturbed on appeal." (See, also, *Connor* v. *Owen,* 28 Cal.App.2d 591, 592-593 [82 P.2d 1114].)

I do not believe it can fairly and honestly be said that the record in this case presents a factual situation on which reasonable minds cannot differ. What has happened thus far demonstrates beyond question that reasonable minds have arrived at different conclusions on the record before us. Such being the case, under the well-settled doctrine, the issue is one of fact and not of law, and hence should be determined by the trier of fact—the jury in this case.

While the majority opinion in this case will create great confusion because it is in clear conflict with numerous other decisions of this court and the District Courts of Appeal which I have cited hereinabove, of graver and more far-reaching concern is the problem that it is in direct violation of the constitutional provision that "the right of trial by jury shall be secured to all, and remain inviolate"; (Cal. Const., art I, § 7). It cannot be doubted that where a factual situation is presented in a case in which litigants are entitled to a jury trial as a matter of right, and the court takes the case from the jury and decides as a matter of law that there is no issue of fact to be determined, the litigants have been deprived of a jury trial, and the Constitution has been violated. Such is the situation in the case at bar. While this result may seem to be unimportant in this case, it has an insidious impact on our whole constitutional structure. If judges who have taken a solemn oath to support the Constitution can ruthlessly disregard its provisions, as the majority has done here, why demand loyalty oaths from those holding positions of lesser importance?

I would reverse the judgment and direct the trial court to enter judgment on the verdict of the jury.

Appellants' petition for a rehearing was denied August 7, 1952. Carter, J., was of the opinion that the petition should be granted.