[Civ. No. 16328.   First Dist., Div. Two.   Aug. 1, 1955.]

IRMA R. HARDIN, Respondent, v. KEY SYSTEM TRANSIT LINES (a Corporation) et al., Appellants.

678

Donahue, Richards, Rowell & Gallagher for Appellants.

J. Adrian Palmquist and George W. Hauer for Respondent.

THE COURT.—Plaintiff brought action for damages suffered when her car collided with a train of defendant Key System Transit Lines, herein further called the Key System, operated by defendant Glotfelty as motorman. She obtained a verdict and defendants appeal from the judgment entered accordingly. Their only grievances are that the court erred in giving an instruction on last clear chance and one other instruction to be mentioned later.

The accident happened at approximately 5:20 in the morning of March 18, 1952, at the intersection of San Pablo Avenue and Yerba Buena Avenue in Alameda County. San Pablo Avenue runs north-south. On Yerba Buena Avenue the Key System has three tracks, crossing San Pablo Avenue at approximately right angles, of which the center one is the eastbound track, on which the train involved ran. Plaintiff was driving south on San Pablo Avenue, going to her work. There were two southbound lanes on San Pablo Avenue over and above the parking lane at the curb. Plaintiff was driving in the outer (western) one of these two lanes. It was dark and raining hard. It had been raining for some time and there were puddles. At the intersection the traffic lights were flashing yellow for traffic on San Pablo and flashing red for the Key System trains. The Key System had a stop for eastbound trains just west of San Pablo Avenue and immediately before the accident happened the train in question was stopped there. Defendant Glotfelty testified, mainly under section 2055 Code of Civil Procedure, that at the stop the front of the train was 3 or 4 feet west of the westerly curb of San Pablo. When he saw the light sign indicating that all doors of the train were closed so that he could start, he rang the gong. Before starting he looked to the right and to the left. To the right there were three or four northbound cars. They were just crossing or going to cross the tracks. Traffic was light. To the left he saw two cars coming southbound. He testified that they were about 150 feet away but conceded that in a deposition of January 20, 1953, he had stated that when he saw plaintiff's car first it was 100 feet away and in his earliest deposition of April 24, 1952, he had also said that his best estimate was that the nearest car was 100 feet away. When as a witness he drew on the map the place where he saw plaintiff's car first, its front was according to scale very little over 100 feet from the track. The car which thereafter had the accident was in the outside lane next to the parked cars. The other car was in the inside lane a little back of the first. When he saw

the cars there he was still in a stopped position. He estimated the speed of the first car at that time at 25-30 miles an hour, but he conceded that in the first deposition he had estimated the speed at at least 30 to 35 miles an hour. He did not make an estimate of the speed when he saw the oncoming cars from the train. He also testified "I knew that she was going too fast for safety" but this testimony was stricken on plaintiff's motion as a conclusion of the witness, although it would have been admissible as to the defendant's knowledge of plaintiff's danger. He testified that he knew that the distance required for stopping would be lengthened by the reaction time of the driver, the speed of the car and the wetness of the road. The other car which was first somewhat behind plaintiff's car passed her and went on in front of the train. It was travelling 5 or 10 miles faster. It passed plaintiff's car between the crosswalk over San Pablo at the northside of the intersection and the train tracks. (The distance between the crosswalk and the center tracks is 45 to 50 feet.) He drew the cars on the map as passing in the crosswalk. When the two cars were in that position the train was still standing still. After a recess defendant asked to correct the latter statement; he was then first starting up, moving a foot or two. Later as a witness for defendants he testified that about that time he realized that she was not going to stop; he threw on the emergency and the train stopped nearly immediately, within a foot or two. When the car hit the train the car was still going at approximately the same speed, she appeared not to have slowed up at all. The train was then stopped. The other southbound car passed just in front of the train when it came to a stop. He was familiar with a company rule that the motorman or the conductor should in case of an accident offer for signature to the person involved a pink card which contains something to the effect that the operator is not to blame for the accident. No such card was offered to the plaintiff.

The witness Neuberger, a police officer, when called to the scene of the accident, found the car crashed head on into the side of the train at the front wheels, roughly 5 feet back from the front end. The front of the train was stopped even with the most westerly rail of the old car tracks on San Pablo. (This is approximately 8 feet from the middle line and 28 feet from the westerly curb of San Pablo.)

The witness Bradford at the time of the accident had been sitting in a car parked at the west curb of San Pablo headed

south. He drew the front of the car on the map at approximately 110 feet north of the middle track. He saw that a spray of water thrown up from a puddle hit plaintiff's car when the other car in the inner láne passed it. He drew the puddle at approximately equal distance from the center track of the Key System and the crosswalk. The other car passed approximately 3 feet in front of the train. The witness heard the gong of the train before it started. When he heard the gong neither of the cars was yet in sight; they were still north of his car.

Parts of a deposition of Mr. Houdek, who was riding in plaintiff's car at the time of the accident, were read into evidence. He had been sitting in the front seat at the right side. Their speed was 20 to 25 miles. He saw the train first when he was 30 feet from it. At the same time plaintiff hit the brakes. The train was then moving out, crossing the western curbline of San Pablo. It was going slower than their car, but was picking up speed. The traffic was light. One car passed them, near the tracks. Just after he saw the train, that other car, which was starting to get ahead of them, swerved to the left and picked up speed. Their own car did not change course. It went 15 feet after the brakes had been applied, and hit the train at its front wheels. The train was then moving. Their car was not going very fast at that time; about 20 or 15 miles, maybe not even that.

Plaintiff's testimony was to the same effect as the above evidence of Mr. Houdek. She also testified that the brakes, windshield wipers and lights were working well. She did not hear a bell. She saw the train first when she was 25 feet away but she drew her car as then in a position in the crosswalk approximately 50 feet away. The train was then moving and even with the west curb of San Pablo. She was then going approximately 23 miles and hit the brakes. She did not swerve. The other car passed her after she passed the crosswalk and splashed her when she was almost at the tracks. She knew that trains were passing and stopping there. The headlight of the train and the inside lights were on.

There is some more partly conflicting testimony of the same witnesses, but the above is sufficient to justify the giving of the instruction on last clear chance. ■ It is undisputed that "An instruction stating the doctrine is proper when there is evidence showing: '(1) That plaintiff has been negligent and, as a result thereof, is in a position of danger from which he cannot escape by the exercise of ordinary care;

and this includes not only where it is physically impossible for him to escape, but also in cases where he is totally unaware of his danger and for that reason unable to escape; (2) that defendant has knowledge that the plaintiff is in such a situation, and knows, or in the exercise of ordinary care should know, that plaintiff cannot escape from such situation; and (3) has the last clear chance to avoid the accident by exercising ordinary care, and fails to exercise the same, and the accident results thereby, and plaintiff is injured as the proximate result of such failure.' " (*Daniels* v. *City & County of San Francisco,* 40 Cal.2d 614, 619 [255 P.2d 785] ; *Doran* v. *City & County of San Francisco,* 44 Cal.2d 477, 483 [283 P.2d 1].) Appellant contends that in this case the stated evidence cannot be considered to prove all the above elements required for the applicability of the doctrine : If plaintiff was negligent in nearing the tracks, she was not in danger until the train started moving and after the moment at which the motorman had knowledge of this danger he would have had to stop instantaneously to prevent an accident. ▮ In cases where the danger and helplessness of the plaintiff are created so nearly simultaneously with the accident the defendant does not have a *clear* chance to avoid the accident by exercise of *ordinary care.* (*Rodabaugh* v. *Tekus,* 39 Cal.2d 290, 296 [246 P.2d 663] ; *Doran* v. *City & County of San Francisco,* 44 Cal.2d 477, 488 [283 P.2d 1].) Appellant contends that the case is on its facts almost identical with *Johnson* v. *Sacramento Northern Ry.,* 54 Cal.App.2d 528 [129 P.2d 503] in which case a rapidly driving motorcycle skidded in daytime under a train crossing the highway at slow speed. We do not agree.

In the Johnson case, *supra,* it is said : "It is only in exceptional circumstances that the doctrine may be applied to cases involving collisions between two moving vehicles or at least in cases where the injured party is driving a rapidly moving vehicle for in such cases the act creating the peril ordinarily occurs practically simultaneously with the happening of the accident and the party sought to be charged can not be said to have had a *last clear* chance to avoid the accident *after* the discovery of the injured party's peril." (54 Cal.App.2d 532.) The exceptional circumstances in this case, not present in the Johnson case, are that the train was standing still with a red flashing light against it when the motorman saw plaintiff's car coming in its direction at a relatively high speed on a dark night with heavy rain; that

he had given a warning signal with his electric gong but that the car did not diminish speed and that he started the train only when the car was quite near, defendant motorman's testimony being in conflict as to whether he had not yet started the train or had just started the train, when the car was away only 50 feet or less.

It is not true that plaintiff could not be in danger and the defendant could not know of that danger until the train was in motion. Suppose that the motorman had seen a drunken man lie down in front of the stopped train. Could it be accepted that only after the operator had started the train the man was in danger and that the applicability of the last clear chance doctrine depended on whether the operator could thereafter timely stop the train or not? At least when the motorman received the signal for departure any person nearing the tracks unaware of a possible movement of the train was in danger. Because of that danger the motorman sounded the gong and looked out to both sides before starting. If at that time he observed facts indicating that the driver of an oncoming car was inattentive and therefore in danger of continuing onto the tracks the motorman undoubtedly had a clear chance to prevent an accident as he simply had to wait a few seconds longer before starting the train. The jury could hold that waiting those few seconds would not constitute more than ordinary care. The jury could also find plaintiff negligently inattentive and as a result thereof in danger.

Appellant contends, however, that plaintiff could escape by the exercise of ordinary care as shown by the fact that the other car escaped by swerving. Considering that the other car was in a better position to escape because it was in a lane further from the oncoming train and was going at a higher speed and that nevertheless that car only just succeeded in passing in front of the train, the question whether plaintiff could also have escaped in that way was evidently for the jury. ■ In this respect it should be noted that total unawareness of danger as well as physical impossibility can cause inability to escape by ordinary care (*Doran* v. *City & County of San Francisco, supra,* 44 Cal.2d 477, and ''that the 'continuing negligence' of the injured party does not deprive him of the benefit of the last clear chance doctrine if all the required elements for the application of that doctrine are present.'' (*Doran* v. *City & County of San Francisco, supra,* 44 Cal.2d 477.)

The treatment of the rule as to total unawareness (negli-

gent inattention) in section 480 of the Restatement, Torts, is instructive with respect to this case. It is said there in comment b: ". . . the defendant is liable only if he realizes or has reason to realize that the plaintiff is inattentive and consequently in peril. . . . However, it is not necessary that the circumstances be such as to convince the defendant that the plaintiff is inattentive and, therefore, in danger. It is enough that the circumstances are such as to indicate a reasonable chance that this is the case. Even such a chance that the plaintiff will not discover his peril is enough to require the defendant to make a reasonable effort to avoid injuring him. Therefore, if there is anything in the demeanor or conduct of the plaintiff which to a reasonable man in the defendant's position would indicate that the plaintiff is inattentive and, therefore, will or may not discover the approach of the train, the engineer must take such steps as a reasonable man would think necessary under the circumstances. If a train is at some little distance, the blowing of a whistle would ordinarily be enough, until it is apparent that the whistle is either unheard or disregarded. The situation in which the plaintiff is observed may clearly indicate that his inattention is likely to persist and that the blowing of the whistle will not be effective. If so, the engineer is not entitled to act upon the assumption that the plaintiff will awaken to his danger but may be liable if he does not so reduce the speed of his train as to enable him to stop if necessary." (See also *Harrington* v. *Los Angeles Ry. Co.*, 140 Cal. 514, 523 [74 P. 15, 98 Am.St.Rep. 85, 63 L.R.A. 238].) The circumstances showing inattentiveness will seldom be observed from a moving train early enough to give the engineer a clear opportunity to take effective measures by ordinary care, but, as noted before, such does not apply in this case, when the defendant motorman was aware of circumstances which might be considered as indicating unawareness before he started the train. Whether from the circumstances observed a reasonable man would have concluded that there was danger of continuing the train in motion were questions of fact for the jury. unawareness of the plaintiff and whether he therefore in the exercise of ordinary care should have abstained from setting

To the question of last clear chance the normal rule applies that only when there is not any substantial evidence, conflicting or otherwise which could justify the application of the last clear chance doctrine the court should keep it

from the jury as a matter of law. Only in such a case is the giving of an instruction on last clear chance reversible error. (*Doran* v. *City & County of San Francisco, supra,* p. 477. We have concluded that such is not the case here.

The other instruction of which appellants complain reads: "While a violation of a company rule by a company employee, if you find such to exist, would not constitute negligence per se, it would be a circumstance for the jury to consider on the issue of defendant's negligence." They contend that the only rule referred to in the evidence, which could have been violated was the one concerning the pink card disculpating the operator, mentioned before. However, the defendant Glotfelty also testified that company rules are that in a situation like in this case he had to obey traffic signals, and that for him the blinking red light meant that he had to make a stop and proceed like at a boulevard stop sign. (See Veh. Code, § 477, subd. 1.) In connection with the fact that the court instructed on said section 477, subdivision 1, and on section 552, Vehicle Code, relating to a boulevard stop, but also gave the instruction that at the time and place of the accident the train operated by defendant was not a vehicle within the meaning of said code sections, the instruction complained of correctly permitted the jury to consider the question, whether at the time the train proceeded, plaintiff's car constituted an immediate hazard in the sense of section 552, *supra,* and therefore the driver violated the company rules as to the obeying of traffic signals, by driving into the intersection.

Judgment affirmed.

A petition for a rehearing was denied August 31, 1955, and appellants' petition for a hearing by the Supreme Court was denied September 21, 1955.