[Civ. No. 4481. Fourth Dist. Feb. 5, 1953.]

JOSEPH H. HAZELETT et al., Appellants, v. PAUL T. MILLER, Respondent.

[Civ. No. 4482. Fourth Dist. Feb. 5, 1953.]

THEODORE G. TEUBE, JR., a Minor, etc., Appellant, v. PAUL T. MILLER, Respondent.

Taylor F. Peterson for Appellants.

Wilson & Wilson for Respondent.

GRIFFIN, J.—These consolidated appeals are from judgments entered upon jury verdicts in favor of defendant. Plaintiffs were guests in an automobile owned and operated by Teube, Sr., guardian of plaintiff Teube, Jr. It was being driven north on Sierra Avenue near its intersection with Highland Avenue, in Fontana. Highland Avenue is a through highway running east and west and is protected with stop signs with reflector buttons. Defendant Miller was driving his car west on Highland Avenue. Teube, Sr., failed to make a boulevard stop, and his car collided with the Miller car in the intersection.

Teube, Sr. testified he was driving about 45 miles per hour as he approached the intersection; that he was not familiar

with the road; that he did not notice a white, but mostly obliterated lettering on the highway or the signpost indicating that Highland Avenue was a boulevard stop street; that he did notice the lights of a car to his right as he was driving through the intersection and that an accident happened instantly thereafter; that he had "no time to watch anything"; that he and the occupants were thrown out of his car and that he did not see Miller until a few days later when they were both in the hospital. He testified that Miller then said to him: "I wish I had seen you coming, I seen your lights and knew you were not going to stop so I tried to beat you to the corner; . . ." that Miller's wife came in about that time and told him not to say anything more and that Miller said to her: "The man didn't deliberately run into me, I could have stopped if I wanted to, I thought I could beat him to the corner." Miller denied having such a conversation. Teube, Sr. admitted consuming one bottle of beer and a "Coke-Hi" earlier in the evening.

Plaintiff Heard testified he was familiar with the route taken by Teube, Sr., and had recommended it as a shortcut; that he knew there was a stop sign somewhere in that vicinity but did not tell Teube, Sr. about it; that he did not see the Miller car before the accident. He admitted drinking one bottle of beer with Teube, Sr. Apparently the other plaintiffs were not familiar with the route and did not remember any facts concerning the cause of the accident.

The highway patrol officer testified that he made measurements at the scene of the accident and talked to Miller in the hospital; that Miller said he had been traveling about 50 miles per hour in approaching the intersection; that he saw Teube's car was not going to stop so he attempted to stop his vehicle but was unable to do so before the Teube car hit him. He testified the Teube car's damage was at its front end and as to the Miller car there was damage to the center of its left side near the door.

Defendant Miller, who received serious injuries in the accident, testified he was traveling about 49 or 50 miles per hour; that when about 50 or 60 feet from the intersection he first noticed the lights of the Teube car approaching the intersection from the south at a distance slightly over 60 feet from the intersection; that he blew his horn; that he knew there was a boulevard stop sign requiring cars going north on Sierra Avenue to stop; that the Teube car did not stop; that when he was almost at the point of impact, traveling between 45 and

50 miles per hour, he tried to avoid the collision by stepping on the accelerator; that he was knocked unconscious and did not clearly remember anything for about two weeks; that all he remembered was that an officer called and asked if he could talk; that he told him he could not and the officer left and never came back.

Mrs. Miller testified she was dozing as they approached the intersection; that she heard the horn sound on defendant's car; that she immediately arose and observed the lights of the Teube car only a few feet from them. She testified her husband was in a semiconscious condition in the hospital for several days and that he made no statement that she ever heard regarding Miller's ability to stop or of his "trying to beat" Teube, Sr. across the intersection.

Plaintiffs' claim is that the court erred in giving and refusing to give certain instructions to the jury. Defendant, in each case, by his answer, raised the issue of contributory negligence of plaintiffs, and proximate cause. Plaintiffs proffered two proposed instructions to the court on that subject, before witnesses were sworn. Defendant offered a general instruction on that subject in the language of B.A.J.I. 133, page 157, and all were given. ■ As we understand plaintiffs' argument, the claim is that these instructions were given by the court under the mistaken theory that the evidence showed a joint venture on behalf of plaintiffs, which evidence, it is claimed, was inadmissible as hearsay.

There was proper evidence admitted showing that Teube, Sr. and the other plaintiffs were going to Colton to attend some lodge activities in which Teube, Jr., and some of the other plaintiffs were to be initiated; that no money was paid Teube, Sr., and no gasoline, oil, etc., was furnished by plaintiffs for the trip; that plaintiff Heard, on the return trip to Barstow, did suggest the route to be taken and directed Teube, Sr. in this respect; that Heard did inform him of one previous stopsign, but as to this particular intersection he did not remember on which street the boulevard stop was located but knew it was "somewhere through there"; and that he did not mention this fact to Teube, Sr.

■ One of plaintiffs' proffered instructions was a general instruction on contributory negligence, and applied to no particular plaintiff. The other was a positive instruction that all plaintiffs were guests and that none of them had a right of control over the conduct of the driver and that the question was whether defendant Miller was negligent in the op-

eration of his vehicle and whether such negligence was a proximate cause of the collision. No prejudicial error resulted. Plaintiffs may not now be heard to complain about the giving of a general instruction offered by defendant in reference to contributory negligence of one or more of plaintiffs, under the evidence here produced, particularly where plaintiffs offered and the court gave plaintiffs' instruction offered by them on the same subject. (*Matsumoto* v. *Renner*, 90 Cal.App.2d 406 [202 P.2d 1051] ; *Lee* v. *Hackney*, 110 Cal. App.2d 444 [242 P.2d 933].)

■ The other complaint is that the trial court refused to give plaintiffs' proffered instruction on the doctrine of last clear chance, citing such cases as *Sills* v. *Los Angeles Transit Lines*, *(Cal.App.) 246 P.2d 65; *Peterson* v. *Burkhalter*, 38 Cal.2d 107 [237 P.2d 977] ; *Daniels* v. *City & County of San Francisco*, *(Cal.App.) 246 P.2d 125; *Girdner* v. *Union Oil Co.*, 216 Cal. 197 [13 P.2d 915] ; and *Selinsky* v. *Olsen*, 38 Cal.2d 102 [237 P.2d 645].) This argument is mainly based on the claimed uncorroborated extrajudicial and equivocal statement of defendant claimed to have been made to his wife in the presence of Teube, Sr. after he stated: "I wish I had seen you coming . . ." He said: "I could have stopped if I wanted to, I thought I could beat him to the corner."

Many of the cases cited by plaintiff in support of his argument are discussed in the late case of *Rodabaugh* v. *Tekus*, 39 Cal.2d 290 [246 P.2d 663]. The physical facts clearly indicate that plaintiff could not have stopped in the distance indicated, had he endeavored to do so. All of the substantial evidence indicates that both cars were approaching this intersection at a fast rate of speed; that the true situation was suddenly ascertained and appreciated; that the parties' reactions were instantaneous and that after a discovery of plaintiffs' perilous situation, neither party had a clear chance or opportunity to avoid the accident by exercising ordinary care. The factual background in the instant case is quite similar to that of the Rodabaugh case. There both cars were approaching the intersection at approximately the same time and at approximately the same speed. The decedent did not reach the point of danger from which he could not extract himself until he was within 60 feet of the path of defendant's car. When defendant first observed decedent both of the auto-

*A hearing was granted by the Supreme Court on September 11, 1952.

mobiles were approximately 500 feet from the intersection. Decedent subsequently failed to heed the stop warnings, and continued into the intersection to the point of impact without slackening his speed. The defendant there testified that he continued to watch decedent's car; that when defendant was some 75 to 100 feet from the intersection he saw that decedent was not slowing down; that he started to apply his brakes gently, thinking that decedent would probably stop; that as decedent approached, he appeared to be looking straight ahead and did not slacken his speed at any time before the impact occurred; that when decedent did not slow down, defendant applied his brakes harder at about 75 feet from the intersection, and at a distance of 35 feet he slammed them on, leaving skid marks on the pavement. There was evidence there that traveling at 40 miles per hour, he could have stopped his car in approximately 60 feet; that defendant did not turn to the right or left before the impact, and his car struck decedent's car on the right side at the rear door and wheel. The court held that the mere fact that evidence in a given case may be sufficient to sustain a finding of negligence on the part of a defendant does not justify the conclusion that such evidence is sufficient to permit application of the last clear chance doctrine; that there must, in addition, be substantial evidence to show that defendant had a last clear chance to avoid the accident. It also held that the doctrine of last clear chance should not be applied in a case involving the collision of moving vehicles where the act creating the peril occurs practically simultaneously with the happening of the accident and where neither party can be said to have had a last clear chance thereafter to avoid the consequences; that to relieve a plaintiff of his own negligence it is not enough that defendant may have had a chance to avoid the accident, but defendant must have had the last chance and also had a clear chance to do so by the exercise of ordinary care; that this implies that his chance to avoid the accident must have come later in point of time than any similar chance on the part of the injured person; and that he must have had more than a bare possible chance to avoid an unexpected peril created practically simultaneously with the happening of the accident by the negligence of the injured party. (See, also, *Jobe* v. *Harold Livestock Com. Co.,* 113 Cal.App.2d 269 [247 P.2d 951]; *Dalley* v. *Williams,* 73 Cal. App.2d 427 [166 P.2d 595]; *Warwick* v. *Maneely,* 40 Cal. App.2d 235 [104 P.2d 831].)

We conclude that the court properly refused the proffered instruction in reference to the doctrine of last clear chance under the evidence here presented.

 The last instruction involves one offered by defendant and given, instructing the jury to the effect that the prima facie speed limit upon Highland Avenue, at the time and place, was 55 miles per hour, and that unless Mr. Miller's speed was clearly proven to have been in violation of the basic speed law "just read to you," the operation by Miller of his automobile at a speed not in excess of 55 miles per hour on Highland Avenue was lawful. This instruction followed one admittedly proper, given in the language of B.A.J.I. 144, setting forth the basic speed law as provided in section 510 of the Vehicle Code.

It is plaintiffs' claim that the court erred in telling the jury that the prima facie speed limit at the time and place was 55 miles per hour; that section 511 of the Vehicle Code, establishing speed limits at 55 miles per hour under certain conditions, is applicable only to criminal cases; that since section 513 of the Vehicle Code declares the proper rule in civil cases, and since an instruction in the language of that section was offered by defendant, the court committed error in refusing to give it, and accordingly, the jury was improperly instructed, citing *Akers* v. *Cowan*, 26 Cal.App.2d 694 [80 P.2d 143]; *Anderson* v. *Mothershead*, 19 Cal.App.2d 97 [64 P.2d 995]; and *Westberg* v. *Willde*, 14 Cal.2d 360, 369 [94 P.2d 590].

It should be here noted that the court did not give the second paragraph of section 511, as was done in the Akers case, and the Anderson case involved the same paragraph in reference to the burden of proof. The Westberg decision held that it was error to give an instruction in the language of section 511, in reference to burden of proof since it was only applicable to criminal actions; that section 513 declares the rule as to the burden of proof in civil cases and that as a consequence the giving of an instruction in the language of section 510 of the Vehicle Code constituted the giving of conflicting instructions on the subject of burden of proof. In the instant case the court properly instructed the jury as to the prima facie speed limit set forth in section 511, subject to the basic speed law set forth in section 510. No mention was made in these instructions as to the burden of proof. In *Burch* v. *Valley Motor Lines, Inc.*, 78 Cal.App. 2d 834 [179 P.2d 47], it was expressly held error to refuse

to give an instruction based in part on section 511, setting forth the prima facie limit of 55 miles an hour, particularly where the jury was instructed in the language of section 510 and section 513. The cases here relied upon by plaintiffs were therein discussed and it was there held that only the second paragraph of section 511 is banned in civil cases.

The proffered instruction setting forth the provisions of section 513 was offered by defendant and might well have been given. The refusal to give such instruction was not prejudicial to plaintiffs' case. In the first place, it was not requested by plaintiffs and plaintiffs made no request for such an instruction. (*Ornales* v. *Wigger*, 35 Cal.2d 474, 478 [218 P.2d 531]; *Peckham* v. *Warner Bros. Pictures, Inc.*, 42 Cal.App.2d 187 [108 P.2d 699].) Defendant's proffered instruction provided that proof of speed in excess of the prima facie limit declared by the court did not establish negligence as a matter of law, and it was necessary for plaintiffs to establish as a fact that the operation of the vehicle at such excess speed constituted negligence. The refusal to give the proffered instruction was more harmful to defendant than it was to plaintiffs. It does not appear from the evidence that there was a miscarriage of justice or that any different verdict would have been rendered had the proffered instruction of defendant been given. (*Vallejo etc. R. R. Co.* v. *Reed Orchard Co.*, 169 Cal. 545 [147 P. 238]; *Service* v. *Bedros*, 180 Cal. 519 [182 P. 26]; 2 Cal.Jur., pp. 1006-1007, §§ 597 and 598.)

Judgments affirmed.

Barnard, P. J., and Mussell, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 2, 1953.