[Civ. No. 19411. Second Dist., Div. Two. May 22, 1953.]

HUBERT C. SCHOUTEN, Appellant, v. STANLEY L. CRAWFORD et al., Respondents.

Arthur Garrett and Lewis Garrett for Appellant.

Sampson & Dryden and Robert E. Moore, Jr., for Respondents.

FOX, J.—This action arose out of an automobile collision in the intersection of Winona Avenue and Lincoln Street in Burbank, California. The accident occurred at about 7:30 a. m., on November 15, 1950. Plaintiff was driving east on Winona, which is 42 feet in width. Defendant Petrone was driving south on Lincoln, which is 38 feet wide, in a Chevrolet which was registered to defendant Crawford. Henry L. Graham was a passenger with Mr. Petrone. The Chevrolet hit plaintiff's car at the left rear wheel and spun it around twice; it stopped against the curb close to the southeast corner of the intersection. A police officer, who was at the scene immediately following the accident, placed the point of impact at 12 feet from the west pedestrian crosswalk and 15 feet north of the south crosswalk. The collision thus took place in the southwest quadrant. The intersection was paved but the north portion of Winona east of the intersection was unpaved and sandy. There were 24 feet of skid marks made by the Chevrolet, starting at the south side of the north cross-

walk. An automotive engineer, who was at the scene at 2 p. m. on the day of the accident, testified that it had rained a day or two before and "there was a great deal of sand on a portion of the highway." The depth of the sand "varied considerably . . . Near the edges it was thinner . . . there was some portion of it where there was lots about two inches high, gradually less and less. . . ." The sand, however, was dry and fine. The skid marks "went through the light part at first, then through the deeper part, and then again the light part." Defendant Crawford arrived soon after the collision. He testified that there was sand "in the immediate intersection" where the skid marks were; that it "more or less feathered out . . . from the intersection."

As not infrequently happens in accident cases, the testimony of the eyewitnesses is in sharp conflict. Plaintiff testified that as he entered the intersection he was going between 15 and 20 miles an hour and observed the Chevrolet "about 70 feet or so" north of the intersection traveling at about 35 or 40 miles an hour. He did not put on his brakes but increased his speed in an effort to avoid the accident.

On the other hand, Mr. Graham, who was riding with defendant Petrone, testified that when they reached the intersection Petrone "all of a sudden . . . hit the brakes hard"; that he looked to the right and saw plaintiff's car traveling at a considerable speed which he estimated at 35 miles an hour at the time of the impact; that the Chevrolet was "at the intersection first"; that when the Chevrolet was in the north crosswalk plaintiff's car was 50 to 60 feet from the west crosswalk.

Defendant Petrone testified that when he was just a little past a signpost marked "School" which was some distance north of the intersection, he observed plaintiff's car approaching the intersection. He put his foot on the brake but did not apply it until the front end of his car was past the north boundary of the intersection. At that time plaintiff was right in front of him and he slid into him. Defendant Petrone also testified that the impact was south of the center line of Winona, and that the left front wheel of his car was about 5 feet west of the center line of Lincoln when the collision occurred.

The investigating officer testified that plaintiff told him he was traveling "at 20 to 25 miles per hour as he was entering the intersection."

The jury returned a verdict for the defendants. Plaintiff appeals from the ensuing judgment.

■ Plaintiff's first contention is that the judgment is not supported by substantial evidence. In this he is in error. The testimony of passenger Graham that the Chevrolet was in the north crosswalk when plaintiff was 50 to 60 feet from the intersection furnishes ample support for an implied finding that plaintiff was guilty of negligence in entering the intersection and that such negligence proximately caused or contributed to the accident. Having found substantial evidentiary support for the jury's verdict, we need not pursue the question of the insufficiency of the evidence further. (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183].) Hence, under established law, plaintiff was not entitled to recover.

■ Plaintiff attacks the testimony of Graham as unworthy of belief. His credibility and the weight to be given his testimony was, of course, a question for the jury's determination in the absence of a showing that his testimony comes within the rule of inherent improbability. No such showing is made. The most that can be said is that there is a conflict between his testimony and that of defendant Petrone. This is not sufficient to invoke the rule of inherent improbability. (*Peterson* v. *Peterson*, 74 Cal.App.2d 312, 318-319 [168 P.2d 474]; *Hansen* v. *Bear Film Co.*, 28 Cal.2d 154, 183-184 [168 P.2d 946].)

Plaintiff argues that it was error to instruct the jury on unavoidable accident and to repeat this instruction at the jury's request during the course of their deliberations without qualification and without again reading the other instructions on negligence.

■ Plaintiff had the burden of proving that the collision was caused solely by the negligence of the driver of the Chevrolet. This, of course, would exclude unavoidable accident. ". . . a determination that an accident was unavoidable is also proper where the evidence merely shows '. . . that the plaintiff has failed in his proof.'" (*Parker* v. *Womack*, 37 Cal.2d 116, 122 [230 P.2d 823].) Here there was a conflict in the evidence on the question of defendant Petrone's negligence. The problem was somewhat complicated by the presence of sand in the intersection. It was, therefore, entirely proper to give the instruction on unavoidable accident. (*Parker* v. *Womack, supra*; *Sherrillo* v. *Stone & Webster Eng. Corp.*, 110 Cal.App.2d 785, 791 [244 P.2d 70].)

■ The jury, upon its return into court, only requested that the instruction on unavoidable accident be read. Plaintiff

did not suggest any qualification thereof or that other instructions on the subject of negligence be read. He may not, therefore, complain on appeal. (*Sherrillo* v. *Stone & Webster Eng. Corp., supra,* p. 789-790.)

Plaintiff argues, also, that the court erred in refusing to give an instruction on the last clear chance doctrine. ''An instruction stating the doctrine is proper when there is evidence showing: '(1) That plaintiff has been negligent and, as a result thereof, is in a position of danger from which he cannot escape by the exercise of ordinary care; and this includes not only where it is physically impossible for him to escape, but also in cases where he is totally unaware of his danger and for that reason unable to escape; (2) that defendant has knowledge that the plaintiff is in such a situation, and knows, or in the exercise of ordinary care should know, that plaintiff cannot escape from such situation; and (3) has the last clear chance to avoid the accident by exercising ordinary care, and fails to exercise the same, and the accident results thereby, and plaintiff is injured as the proximate result of such failure.' '' (*Daniels* v. *City & County of San Francisco,* 40 Cal.2d 614, 619 [255 P.2d 785].) ██ To warrant the giving of this instruction there must be substantial evidence to establish each of the enumerated elements. (*Rodabaugh* v. *Tekus,* 39 Cal.2d 290, 293 [246 P.2d 663]; *Jobe* v. *Harold Livestock Com. Co.,* 113 Cal.App.2d 269, 273 [247 P.2d 951].)

We may assume, but without deciding, that the evidence as to the elements mentioned in (1) and (2) quoted above was sufficient to justify giving the instruction, but there is no substantial evidence to show that *after* Petrone discovered plaintiff's perilous situation he had a *clear* chance to avoid the collision by the exercise of ordinary care or that he failed to exercise such care. ██ In this connection ''it is important to bear in mind that the mere fact that the evidence in a given case may be sufficient to sustain a finding of negligence on the part of a defendant does not justify the conclusion that such evidence is sufficient to permit the application of the last clear chance doctrine.'' (*Rodabaugh* v. *Tekus, supra,* p. 293.) ██ The fact that defendant Petrone saw plaintiff a substantial distance before the latter entered the intersection does not establish that plaintiff was in a position of danger while he was traveling such distance. (*Rodabaugh* v. *Tekus, supra,* p. 294; *Dalley* v. *Williams,* 73 Cal.App.2d 427,

64

435-436 [166 P.2d 595].) Plaintiff was not in a position of danger until he arrived at a point at which he could no longer stop or slow down or accelerate his speed in time to avoid a collision. *Rodabaugh* v. *Tekus, supra*; *Dalley* v. *Williams, supra*, p. 435; *Young* v. *Southern Pac. Co.*, 182 Cal. 369, 380 [190 P. 36].) Here the evidence shows unmistakably that defendant Petrone did not realize plaintiff's position of peril until he was in the crosswalk. That is when he applied the brakes. His testimony, that of his passenger, and the beginning of the skid marks all point to that as a fact. Plaintiff testified that the Chevrolet was traveling at an estimated speed of 40 miles an hour when he "first saw the car entering the intersection" and "between 35 and 40" when Petrone "put the brakes on." Plaintiff was driving 4 to 6 feet south of the center line of Winona, which is 42 feet wide. This means that the Chevrolet was only some 25 to 30 feet away from plaintiff's car when defendant Petrone realized plaintiff's position of danger and applied his brakes. The accident then happened in a split second. At that point Lincoln Street is slightly downgrade. It will be recalled that there was sand in the intersection and plaintiff accelerated the speed of his car. The 24 feet of skid marks give emphatic evidence of Petrone's earnest effort to stop his car upon realizing plaintiff's peril. Considering the relative time, speed and distance factors, the presence of sand in the intersection, plaintiff's sudden change of speed and the grade of the street, it is obvious that defendant Petrone had no *clear* chance to avoid the collision by the exercise of ordinary care, or that he failed to exercise such care.

█ As was said in *Rodabaugh* v. *Tekus, supra*, (p. 294), "It is apparent that this case presents the picture of one of the usual types of intersection collisions between two rapidly moving vehicles." The court then observed: "It has been frequently stated that the last clear chance doctrine is ordinarily inapplicable under such conditions." Illustrative of this statement are *Poncino* v. *Reid-Murdock & Co.*, 136 Cal. App. 223 [28 P.2d 932]; *Dalley* v. *Williams, supra*; *Folger* v. *Richfield Oil Corp.*, 80 Cal.App.2d 655 [182 P.2d 337]; *Berton* v. *Cochran*, 81 Cal.App.2d 776 [185 P.2d 349]; *Allin* v. *Snavely*, 100 Cal.App.2d 411 [224 P.2d 113]; *Jobe* v. *Harold Livestock Com. Co., supra*; *Hazelett* v. *Miller*, 115 Cal.App. 2d 801 [252 P.2d 997]. See, also, *Daniels* v. *City & County of San Francisco, supra*, pp. 639, 640. █ The evidence was sufficient to warrant the application of the imminent

peril doctrine in favor of the defendants, but was insufficient to warrant the application of the last clear chance doctrine in favor of plaintiff for, as said in *Bagwill* v. *Pacific Elec. R. Co.*, 90 Cal.App. 114, 121 [265 P. 517], "Certainly the doctrine of last clear chance never meant a splitting of seconds when emergencies arise. . . . The words mean exactly as they indicate, namely, last *clear* chance, not possible chance." Hence it was not error to refuse to instruct on that doctrine.

 Plaintiff argues also that the verdict was the direct result of misconduct of a juror. This is based on an affidavit that a juror named Johnson who later became foreman had done, prior to the submission of the case to the jury, some checking on the value of electroencephalograms and had also consulted a book to check on the reputation, background and qualifications of the doctors who testified.

While the juror undoubtedly violated the court's admonition, it is clear that his conduct was not prejudicial since it dealt with matters touching the character and extent of plaintiff's injuries and the reliability of the witnesses testifying on such matters. Such testimony, however, never became crucial since the jury came to the conclusion that plaintiff was not entitled to recover. In denying plaintiff's motion for a new trial on this ground the judge of the trial court undoubtedly concluded that the juror's conduct was not prejudicial. We certainly cannot say that the court abused its discretion in so finding.

Furthermore, this incident was drawn to counsel's attention before the jury returned its verdict. Plaintiff did not move for a mistrial and stated "it was undoubtedly within the approval of both counsel that the jury was sent back for further deliberation." This constituted a waiver by plaintiff of any right to later complain of this circumstance.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied June 17, 1953, and appellant's petition for a hearing by the Supreme Court was denied July 15, 1953. Carter, J., was of the opinion that the petition should be granted.