[Civ. No. 15494. First Dist., Div. One. Nov. 19, 1953.]

CATHERINE LOUISE BUCK et al., Respondents, v. CHARLES EDWARD HILL et al., Appellants.

Hancock, Elkington & Rothert for Appellants.

Warren Olney III, C. Ray Robinson, R. A. McCormick and William B. Boone for Respondents.

BRAY, J.—On motion for new trial, the judgment based on a verdict in favor of plaintiffs for $200,000 was reduced to $150,000. Defendants appeal from the reduced judgment.

### QUESTIONS PRESENTED

1. Sufficiency of the evidence as to negligence of defendants and lack of contributory negligence.
2. Propriety of giving instruction on last clear chance.

### EVIDENCE

Plaintiffs are the widow and children of George Simonds Buck, who was killed in a collision in the center lane of a three-lane highway between a Ford sedan driven by him and in which he was alone, and a Greyhound bus driven by defendant Hill. The weather was clear, the pavement dry, the hour about 5:10 p. m., and the road straight and level. Buck was driving south, the bus going north. The traffic lanes were 10 feet wide, the bus a little less than 8 feet wide. When the impact occurred the bus was in the center lane 1 foot to the right of the line dividing that lane from the southbound lane. The Ford then was on an arc diagonally crossing the center lane into the southbound lane. The left front corner of the bus hit the left front side of the Ford. The main conflicts in the evidence were as to which vehicle entered the center lane first, the speeds of the two cars, and whether Hill applied the bus' brakes lightly or heavily. While there seems to be no conflict in the testimony of the witnesses that the initial distance between the two vehicles in the center lane was 150 to 200 feet, the physical evidence of the tire marks of the two vehicles demonstrates that the distance was greater. Two witnesses for plaintiffs testified that the bus was entering the center lane when struck. Four witnesses testified that the bus had been in the center lane for some time prior to the collision. Hill testified that when Buck pulled out in the center lane Hill shoved the bus' brake pedal down flat and held it there until the impact. Then the air line and the steering knuckle broke. Certain witnesses for plaintiffs testified that the brakes were not firmly applied, although there were witnesses for defendants who said they were. Cars in the northbound lane at the bus' right prevented the bus from turning into that lane as the bus and the Ford approached each other. With one exception, all witnesses on the subject estimated the speed of the bus at approximately 40 miles an hour. The exception was a 14-year-old boy who estimated it at 60 miles. All witnesses on the

subject of Buck's speed estimated it between 80 and 85 miles an hour, including Hill. However, a representative of the plaintiff in intervention, Liberty Mutual Insurance Company, testified Hill stated to him two days after the accident that Buck's speed was 55 miles an hour when it was 2,000 to 2,500 feet away.

1. *Sufficiency of the Evidence.*

Obviously the testimony of the two witnesses who stated that the bus was just moving or had moved into the center lane after it was already occupied by the Ford, if believed by the jury, would be sufficient to establish defendants' negligence.

2. *Last Clear Chance.*

The court gave an instruction on the last-clear chance doctrine. No attack is made upon the form of the instruction, but defendants contend that there was no evidence to justify giving the instruction. ■ The elements necessary to the application of the doctrine are (1) that plaintiff by his own negligence has got himself into a position of danger; (2) as a result thereof it is physically impossible for him to escape by the exercise of ordinary care, or he is totally unaware of his danger and for that reason cannot escape; (3) that defendant has actual knowledge that plaintiff is in such situation and knows, or in the exercise of ordinary care should know, that plaintiff cannot escape from such situation; and (4) that defendant has the last *clear* chance to avoid the accident by exercising ordinary care and fails to do so. (*Peterson* v. *Burkhalter,* 38 Cal.2d 107, 109 [237 P.2d 977].) In determining the applicability of the doctrine we must necessarily consider the evidence most favorable to its application. The first and second elements are supported by the evidence of Buck's excessive speed and of his entry into the center lane after the bus was already therein. The third element is supported by Hill's own testimony that when he saw Buck pull out into the center lane from behind a pickup truck in the southbound lane he knew that Buck ''was in trouble.'' At that time the two vehicles were approximately 150 to 200 feet apart. It was then that Hill applied his brakes. Defendants concede that the evidence supports these three elements. The fourth element, namely, that after knowing of Buck's perilous situation, Hill had a *clear* chance to avoid the accident by the use of ordinary care, is the one in dispute and as to which the most serious question arises.

In recent years the courts of California have shown a tendency towards liberality in the application of the last clear chance doctrine. (See "Recent Developments in California's Last Clear Chance Doctrine," 40 Cal.L.R. 404, 409.) *Galbraith* v. *Thompson,* 108 Cal.App.2d 617 [239 P.2d 468], states that the most recent decisions of the Supreme Court, *Peterson* v. *Burkhalter, supra,* 38 Cal.2d 107, and *Selinsky* v. *Olsen,* 38 Cal.2d 102 [237 P.2d 645], in which cases many of the cases cited by defendants are considered, show that the development of the law with respect to last clear chance continues in the direction of liberality and that "no technical distinctions will be permitted to keep the doctrine from the jury where the jury could find that defendant did not act as a prudent man after discovering the victim's peril." (Pp. 622-623.) However, it is still the law that there must be substantial evidence to show that defendant had a last *clear* chance to avoid the accident. (*Rodabaugh* v. *Tekus,* 39 Cal.2d 290, 294 [246 P.2d 663].) That case stated that the last clear chance is ordinarily inapplicable to rapidly moving vehicles meeting at an intersection and is cited by defendants as analogous to the situation in our case, although here no intersection collision was involved. In the Rodabaugh case, the court quoted the rule from *Poncino* v. *Reid-Murdock & Co.,* 136 Cal.App. 223 [28 P.2d 932] (an intersection case): " 'While the doctrine of last clear chance has been applied in certain exceptional cases involving collisions between moving vehicles, we are of the opinion that it should not be applied to the ordinary case in which *the act creating the peril occurs practically simultaneously with the happening of the accident* and in which neither party can fairly be said to have had a *last clear chance* thereafter to avoid the consequences . . .' " (39 Cal.2d, p. 295; first emphasis added.) Again, the chance of avoiding the accident must be a *clear* one rather than a *possible* one. (*Peterson* v. *Burkhalter, supra,* 38 Cal.2d 107.) It was there held that it cannot be said as a matter of law that, under the circumstances of that case, the defendant with two seconds to avoid the accident did not have a clear chance to do so. While there are many cases in California considering the last clear chance doctrine, some holding that as a matter of law the evidence would not support a finding that the defendant had a last clear chance, others holding either as a matter of law he did or that there was evidence from which the jury could have found that he did, there is no clear definition as to what constitutes last

clear chance. ▮▮ It depends upon the particular circumstances of the case, and whether the evidence would support a finding that a prudent person would have done a particular act under the circumstances, and that such an act clearly would have avoided the accident. So our task is to determine whether, taking the evidence and the reasonable inferences therefrom most strongly in favor of plaintiffs, there is such evidence here. Under the facts of this case, that question resolves itself into two aspects: (1) after realizing Buck's peril did defendant apply the brakes of the bus as hard as a prudent person would have done, and (2) if not, would such an application clearly have avoided the accident?

▮▮ Hill testified that when Buck pulled into the center lane, they were 150 to 200 feet apart (other witnesses gave it as 180 to 200 feet), and Hill then knew Buck was "in trouble." Hill testified that after a reaction time which he estimated to be about four-fifths of a second, he started to put the brakes on and shoved the brake pedal down flat. Witnesses for the plaintiffs testified that the brakes were not applied hard, while witnesses for defendants testified they were. Hughes, a highway patrolman who arrived at the scene shortly after the accident, testified that the Ford left approximately 54 feet of heavy skid marks up on the point of impact. These marks led from the center of the center lane on an arc to the Ford's right to the point of impact which was one foot inside the right line of said center lane. He testified that there were eight tire marks (as distinguished from skid marks and which were "no indication of a firm application of the brakes") of the bus for approximately 132 feet before the impact. Thus, there was evidence from which the jury could have determined that the brakes of the bus at no time were firmly applied.

This brings us to the second question, that of the reasonable probability to the effect of an immediate hard application of the brakes had it been made. Hill testified he was going 40 miles an hour. Section 670, Vehicle Code, provides a stopping distance of 148 feet for vehicles traveling at that rate. However, to avoid the accident it was not necessary for the bus to come to a complete stop. The Ford was angling out of the center lane (in what the officer called a "slight arc") when it was hit at its left front corner. Certainly at some point short of a complete stop by the bus, the Ford would have cleared the bus. Just where this point would be and whether the heavy application of the brakes of the bus

would have slowed it enough to allow the Ford to clear is the problem here. The officer, on cross-examination by defendants, testified without objection that in his opinion the bus driver probably could have avoided the accident. "It is well settled that in determining the question of the sufficiency of the evidence to sustain a trial court's decision, the appellate court will consider all proper evidence embraced in the record, including incompetent evidence admitted without objection; . . ." (*People* v. *One Ford V8 Coach*, 21 Cal.App.2d 445, 448-449 [69 P.2d 473] ; see, also, *Stickel* v. *San Diego Elec. Ry. Co.*, 32 Cal.2d 157 [195 P.2d 416] ; and *Smith* v. *Busniewski*, 115 Cal.App.2d 124 [251 P.2d 697].) The Ford was only 16 feet long. A foot or two had already cleared the bus; thus the bus needed to be retarded only sufficiently to give the Ford another 16 feet at most and there would have been no collision. Both parties in their briefs indulge in almost slide-rule calculations, the one to prove that the bus driver had ample opportunity to avoid the accident, the other to prove that he did not. We believe that the problem is not as complicated as all that. From the light tire marks of the bus and from the testimony of plaintiffs' witnesses, it appears that Hill after knowing the Ford's peril, and after Hill's reaction time had passed, *lightly* applied his brakes when he was approximately 132 feet from the point of impact. Whether a reasonably prudent person under the circumstances would have applied the brakes as Hill claims he did was a question for the jury. Had he applied them as he said he did, with full force, he would have brought his bus to a complete stop approximately 18 feet beyond the point of impact. Hill could not give his estimate of the bus' speed at the point of impact other than that it was going "somewhat slower" than 40 miles an hour. Going at 40 miles an hour Hill was covering approximately 60 feet per second. Thus, it took him at least two seconds *after* his reaction time had expired to meet the oncoming Ford. Giving him the normal reaction period of four-fifths of a second, which he stated he had, it is physically demonstrated that he had at least 2-4/5 seconds from the time he started to react to Buck's peril in which to act to avoid the accident. The time would actually be greater than that dependent upon how much he was slowed down by the light application of brakes. In *Peterson* v. *Burkhalter, supra,* 38 Cal.2d 107, the court in referring to *Poncino* v. *Reid-Murdock & Co.,* 136 Cal.App. 223 [28 P.2d 932], stated that the latter case "does not stand for

the proposition that, as a matter of law, a defendant with two seconds within which to avoid an accident had no chance to do so." (P. 112.) "If he has the opportunity of avoiding the injury, he must at his peril exercise it." (*Girdner* v. *Union Oil Co.*, 216 Cal. 197, 203 [13 P.2d 915].) Nor can we say as a matter of law, having in mind the time element and the fact that in approximately 16 more feet the Ford would have cleared the bus, that in all reasonable probability a heavy application of the bus' brakes would not have afforded ample time for the Ford to get by the bus. In *Hopkins* v. *Carter*, 109 Cal.App.2d 912 [241 P.2d 1063], the court held in applying the doctrine that whether among other things the defendant could have stopped his car within a given distance was for the jury to determine.

As said in *Bagwill* v. *Pacific Electric Ry. Co.*, 90 Cal.App. 114 [265 P. 517], "Like the body of the law of negligence, to which the doctrine [last clear chance] is appended, the test remains as that of ordinary care under all of the circumstances." (P. 121.) "We cannot say as a matter of law that he did not, by exercising ordinary care, have the last clear chance to avert the collision—something more than a split second possible chance." (*Selinsky* v. *Olsen, supra,* 38 Cal.2d 102, 106.) "Whether the doctrine of last clear chance is applicable depends entirely upon the existence or nonexistence of the elements necessary to bring it into operation, and whether such elements exist or do not exist is ordinarily a question of fact to be determined by the fact-finder." (*Bailey* v. *Wilson,* 16 Cal.App.2d 645, 647 [61 P.2d 68].) Again, like the body of the law of negligence, if the question is one upon which reasonable minds might differ, it is one of fact which must be left to the jury and not one of law for the court. (See *Collins* v. *California Street Cable R. R. Co.*, 91 Cal.App. 752, 755 [267 P. 731].) Under the evidence, the jury could have found that defendant had a clear chance, as the law requires, rather than "a bare possible chance." (See *Poncino* v. *Reid-Murdock & Co., supra,* 136 Cal.App. 223, 227.)

It must be pointed out that the calculations above set forth are not the kind which in *Rodabaugh* v. *Tekus, supra,* 39 Cal.2d 290, the court held, in effect, to be too "nice." There defendant's total time for reaction and effective action was somewhere between $1\frac{1}{4}$ *and* $1\frac{3}{4}$ seconds, where here defendant after he had completely reacted and started to apply his brakes had more than 2 seconds for effective action.

Defendants contend that the doctrine should not apply to vehicles approaching each other at high rates of speed, citing as authority therefor *Poncino* v. *Reid-Murdock & Co., supra,* 136 Cal.App. 223, 232, *Johnson* v. *Sacramento Northern Ry.,* 54 Cal.App.2d 528, 532 [129 P.2d 503], and *Folger* v. *Richfield Oil Corp.,* 80 Cal.App.2d 655, 659 [182 P.2d 337]. In none of these cases did the courts so hold. In the Poncino case which we hereinbefore pointed out was discussed in *Peterson* v. *Burkhalter, supra,* 38 Cal.2d 107, the court said that the doctrine had been applied in "certain exceptional cases involving collisions between moving vehicles." In the Johnson case where the collision was between a motorcycle and a train, and in the Folger case, which involved an intersection collision, the court used somewhat similar language. In *Daniels* v. *City & County of San Francisco,* 40 Cal.2d 614 [255 P.2d 785], the court was distinguishing its facts from those in other cases including the Poncino and Johnson cases, and said: "The relative time, speed and distance factors in the cases where the evidence was held insufficient as a matter of law to permit the application of the doctrine were quite different from those before us." (P. 623.) In *Rodabaugh* v. *Tekus, supra,* 39 Cal.2d 290, 302, the dissenting opinion of Mr. Justice Carter points out that there are numerous decisions by the California Supreme Court applying the doctrine to moving vehicles.

While it is true, as contended by defendants, that no California case has applied the doctrine to a situation where moving vehicles were approaching each other at the speeds in this case, that fact, however, should not bar its application here. Its application is not determined by speed or lack of speed alone, but by the question of whether the elements of the doctrine are present. In the cases cited by defendants where the court refused to apply the doctrine, the circumstances were far different than in our case. Thus in *Mehling* v. *Zigman,* 116 Cal.App.2d 729 [254 P.2d 141], the defendant's tractor and attached vans had jackknifed and were stopped on the highway. The court held that there was no evidence that the tractor driver had any actual knowledge of the perilous position of the Buick driver in time to have backed his equipment off the roadway. In *Schouten* v. *Crawford,* 118 Cal.App.2d 59 [257 P.2d 88], an intersection case, the court held the doctrine not applicable because defendant's car was only 25 to 30 feet from plaintiff's car when the defendant realized plaintiff's position of danger. "The acci-

dent then happened in a split second." (P. 62.) In *Hazelett* v. *Miller*, 115 Cal.App.2d 801 [252 P.2d 997], also an intersection case, the court held (p. 805): "The physical facts clearly indicate that plaintiff could not have stopped in the distance indicated, had he endeavored to do so. All of the substantial evidence indicates that both cars were approaching this intersection at a fast rate of speed; that the true situation was suddenly ascertained and appreciated; that the parties' reactions were instantaneous and that after a discovery of plaintiffs' perilous situation, neither party had a clear chance or opportunity to avoid the accident by exercising ordinary care."

In *Rodabaugh* v. *Tekus, supra,* 39 Cal.2d 290, many of the cases cited by defendants in support of their arguments as well as other cases concerning the doctrine are discussed. *Hazelett* v. *Miller, supra,* 115 Cal.App.2d 801, refers to other cases. ▮ From the Rodabaugh and Hazelett and other cases it appears that the rule in California is that "the doctrine of last clear chance should not be applied in a case involving the collision of moving vehicles where the act creating the peril occurs practically simultaneously with the happening of the accident and where neither party can be said to have had a last clear chance thereafter to avoid the consequences . . . " (*Hazelett* v. *Miller, supra,* 115 Cal.App.2d 801, 806.) As pointed out herein, it appears from the evidence that although the bus and the Ford were approaching each other at great speeds, there was evidence from which the jury could have determined that the peril did not occur practically simultaneously with the happening of the accident, and defendants did have a last clear chance after the discovery of Buck's peril to avoid the consequences. Hence, the giving of a last clear chance instruction was proper.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied December 18, 1953, and appellants' petition for a hearing by the Supreme Court was denied January 13, 1954. Schauer, J., was of the opinion that the petition should be granted.