[Civ. No. 16624. First Dist., Div. One. May 14, 1956.]

JOSEPH FERNER, Appellant, v. MATHEW CHARLES CASALEGNO, Respondent.

Jarvis, Miller & Decker and Martin J. Jarvis for Appellant.

Boyd & Taylor for Respondent.

PETERS, P. J.—Plaintiff, in the middle of the night and while on foot and intoxicated, attempted to cross the Bayshore Highway. He was hit by an automobile driven by defendant. In this action for the resulting injuries the major contention of plaintiff was that defendant had the last clear chance to avoid the accident. The trial court gave complete and proper instructions on that doctrine. The jury brought in a defendant's verdict, and the trial judge denied plaintiff's motion for a judgment notwithstanding the verdict. Plaintiff appeals from the judgment and from the order denying his motion, his major contention being that, under the evidence, the doctrine of last clear chance was applicable as a matter of law.

The accident occurred at 11:55 p. m. on the evening of September 29, 1953, on Bayshore Highway in Palo Alto. Defendant was proceeding northerly on Bayshore, driving a 1951 Oldsmobile sedan, and was alone in the car. Bayshore, in this general area, has four driving lanes. Down the center of the highway is a double white line, while the two northerly and the two southerly lanes are divided from each other by a single white line. The two inner lanes adjoining the double white lines are each 10 feet 4 inches wide, while the width of the two outer lanes is 9 feet 8 inches. In addition, there is an asphalt shoulder about 8 feet wide on each side of the highway. The highway is asphalt, level, straight, and, at the time of the accident, dry. At the scene of the accident it is well lighted by street lights and by lights from businesses located along the highway.

Just prior to the accident defendant was proceeding northerly in the proper lane adjoining the shoulder, at a speed of between 30 to 35 miles per hour. His brakes, horn, tires and lights, which were on normal beam, were in good working order. Defendant testified that he could see clearly as far ahead as the headlights showed. Under section 648, subdivision (d), of the Vehicle Code, as it read at the time of the accident, it was required that the headlights illuminate a distance of 100 feet.

The accident occurred some 300 feet northerly from the intersection of University Avenue and Bayshore. Defendant testified that as he crossed that intersection there was no

traffic ahead of him proceeding northerly, and that he could recall none proceeding southerly.

Plaintiff admitted that just prior to the accident he was intoxicated. He remembers being in a bar on the west side of Bayshore, coming out, asking somebody how to get to Palo Alto, and then trying to cross the highway. He stated that he "marched" straight ahead, without looking to the right or left, until his progress was stopped by defendant's car. Admittedly, at the point that he attempted to cross the highway there is no intersection, and no pedestrian crosswalk. He testified that he remembers seeing defendant's car a fleeting second before it hit him, and had a faint recollection of trying to leap out of the way.

Defendant testified that he first observed the plaintiff coming west to east across the highway when plaintiff was at the double line; that he observed that plaintiff was dressed in light blue clothes and was facing straight ahead in an easterly direction; that the plaintiff did not change his direction from the time defendant first saw him until the point of impact; that plaintiff was proceeding quite fast, either staggering, or running; that he, the defendant, kept his eyes on plaintiff from the time he first observed plaintiff up to the moment of impact. The defendant did not testify as to how far he was from plaintiff when he first observed plaintiff nor at what precise point he applied the brakes. The defendant's car proceeded straight ahead to the point of impact, with the right side of the automobile within one foot of the adjoining shoulder. There were skid marks 36 feet long measured from the front of the car to the beginning of the skid marks. These skid marks were in a straight line parallel to the shoulder. The damage to defendant's car indicates that the right front center section of the hood struck the plaintiff. A highway officer, from physical evidence, determined that defendant stopped about four feet from the point of impact. No one testified as to the precise speed of the car at the time of impact.

Plaintiff, in an attempt to fix the point where defendant was when he first observed the plaintiff, and to demonstrate, mathematically, that defendant could have stopped had he exercised due care, produced a professor of applied physics and mechanical engineering. The professor first testified that a car traveling 30 miles an hour travels 44 feet per second; at 35 miles per hour it covers 51.3 feet per second. Then he testified that a man walking rapidly would cover

five feet per second; that it would take a man so walking 3.4 seconds to cover the 17 feet from the double white line to the point of impact; that a vehicle in the same period, proceeding at a constant speed of 30 miles per hour, would cover 150 feet. Therefore, so it was contended, if defendant was proceeding at 30 miles per hour and first saw plaintiff at the white line, defendant must have been 150 feet from the point of impact at that moment. If defendant's speed was 35 miles per hour he must have been 175 feet from the point of impact when he first saw plaintiff. Plaintiff, using these mathematical computations as his base, then refers to section 670 of the Vehicle Code that requires that a car traveling at 30 miles per hour to be equipped with brakes capable of stopping in 83.3 feet, and a car traveling at 35 miles per hour within 113 feet—both distances being less than the distances the professor computed that the defendant was from the point of impact when he first saw the plaintiff.

These computations, although interesting, are, of course, not conclusive. They are based on the false premise that defendant proceeded at a constant speed of 30 miles per hour from the time defendant first saw plaintiff up to the point of impact. That, of course, is demonstrably untrue. During an appreciable portion of that distance, we know that defendant was braking the car, so that the car was slowing down. This factor was disregarded by the professor. Moreover, neither the professor nor anyone else could know the precise speed of the plaintiff, so that the figure 3.4 seconds required to cover the 17-foot distance is, at best, but a guess. Even a slight error in this guess would materially affect the ultimate computation.

As already pointed out, the basic contention of plaintiff is that the trial court should have directed a verdict in his favor or should have granted his motion for a judgment notwithstanding because, so it is contended, as a matter of law, he was entitled to recover under the doctrine of last clear chance. It must be remembered that the trial court agreed with plaintiff that the last clear chance doctrine was involved in the case, and, over defendant's objections, gave plaintiff's proffered instructions on this subject which plaintiff does not and cannot attack.

Of course, a case in which the court is required to direct a verdict on the doctrine of last clear chance is a rare one. The trial court can decide a factual matter as a matter of law only where the facts are uncontroverted, and where

reasonable minds can draw but one legitimate inference therefrom. (*Gaston* v. *Hisashi Tsuruda*, 5 Cal.App.2d 639 [43 P.2d 355]; *Export Leaf Tobacco Co.* v. *County of Los Angeles,* 89 Cal.App.2d 909 [202 P.2d 622]; *Southern Calif. Collection Co.* v. *Napkie*, 106 Cal.App.2d 565 [235 P.2d 434]; *Industrial Indem. Co.* v. *Golden State Co.,* 117 Cal.App.2d 519 [256 P.2d 677]; *Hicks* v. *Reis*, 21 Cal.2d 654 [134 P.2d 788].) In applying this rule to the present case we are required to determine whether, after disregarding conflicts, considering only the evidence most favorable to defendant, all of the elements of last clear chance were proved, as a matter of law.

What are these elements? They were plainly set forth in *Doran* v. *City & County of San Francisco*, 44 Cal.2d 477, 483 [283 P.2d 1], in the following language: ''Whether or not the doctrine of last clear chance applies in a particular case depends wholly upon the existence or nonexistence of the elements necessary to bring it into play. ▮ The doctrine presupposes: '(1) That plaintiff has been negligent and, as a result thereof, is in a position of danger from which he cannot escape by the exercise of ordinary care; and this includes not only where it is physically inpossible for him to escape, but also in cases where he is totally unaware of his danger and for that reason unable to escape; (2) that defendant has knowledge that the plaintiff is in such a situation, and knows, or in the exercise of ordinary care should know, that plaintiff cannot escape from such situation; and (3) has the last clear chance to avoid the accident by exercising ordinary care, and fails to exercise the same, and the accident results thereby, and plaintiff is injured as the proximate result of such failure.' [Citing a case.] If any one of these elements is absent, the doctrine does not apply and the case is governed by the ordinary rules of negligence and contributory negligence.''

▮ If there was a conflict on any one of these elements, then, of course, the trial court properly submitted the issue to the jury.

In the instant case the first part of the first element of the doctrine—that plaintiff was negligent—certainly appears as a matter of law. ▮ Crossing the highway without looking for ' approaching traffic constitutes negligence. ▮ Moreover, plaintiff clearly violated section 562, subdivision (a), of the Vehicle Code requiring pedestrians crossing a roadway, other than an intersection or crosswalk, to yield the right-of-way to vehicles on the roadway. Violation of this section is

negligence *per se*. (*Chase* v. *Thomas*, 7 Cal.App.2d 440 [46 P.2d 200]; *Weissman* v. *Seehusen*, 55 Cal.App.2d 391 [131 P.2d 10].)

The second part of the first element of the doctrine requires that, as a result of such negligence, plaintiff be in a position of danger from which he cannot escape by the exercise of ordinary care. Included within this concept are situations not only where it is physically impossible for plaintiff to escape, but cases where he is totally unaware of his danger, and for that reason unable to escape. The question is, was plaintiff in such a position of danger *as a matter of law* when he crossed the double white line some three seconds before he was hit? We think he was not. One of the leading cases on this subject is *Dalley* v. *Williams*, 73 Cal.App.2d 427 [166 P.2d 595]. At page 435 it is stated:

"The last clear chance doctrine was not applicable until plaintiff arrived at such a point as to be in peril, and this was the point where he could no longer escape injury by exercising ordinary care. [Citing two cases.] In *Cady* v. *Sanford*, 57 Cal.App. 218, 224 [207 P. 45], it was said:

" 'At some appreciable time prior to the crash plaintiff was in a position of peril. He was in a position of peril at the very instant that he arrived at that point where he no longer could avoid an accident by exercising ordinary care. Then, and not until then, was the last clear chance doctrine applicable.'

"It has been likewise held that the term 'place of safety' ordinarily includes the position of the plaintiff while he is merely *approaching* the place of danger, and so long as he is only *approaching* but is not actually *in* a position of danger, the plaintiff cannot invoke the doctrine. [Citing three cases.] While a person may be in danger or peril, i. e., while he may be simply exposed to injury, that is not enough to constitute a position of danger within the meaning of the last clear chance doctrine, and in order to comply with the requirements of this element of the doctrine, his position of danger must not only be an exposure to injury but it must be one from which he cannot extricate himself by exercising ordinary care. [Citing three cases.] The fact that a defendant actually sees the plaintiff some considerable time before the accident, or at a time when either or both of them are a considerable distance away from the place of the accident does not necessarily make the doctrine applicable. [Citing two cases.] It has been held, in a certain class of cases, that

if a defendant, while still a considerable distance away from the accident, sees the plaintiff approaching the place of danger, he has a right to assume, until the circumstances apprise him to the contrary, that the plaintiff will stop before reaching the place of danger. [Citing three cases.]'' (See also *Schouten* v. *Crawford,* 118 Cal.App.2d 59 [257 P.2d 88].)

██ Under the rule of this case, fortified as it is by the many authorities cited in the opinion, we cannot say that plaintiff here was, as a matter of law, in a position of danger when he crossed the double white line about 3.4 seconds before the accident.

The second element laid down in the Doran case, *supra,* is that defendant has knowledge that the plaintiff is in a position of danger, and knows, or in the exercise of ordinary care should know, that plaintiff cannot extricate himself. This is, of course, closely related to the element last discussed. This court in *Fleharty* v. *Boltzen,* 137 Cal.App.2d 187 [290 P.2d 311], recently considered this element of the doctrine in a case involving substantially the same problem as the one here involved. At page 230 this court stated:

''. . . The fact that plaintiff approached the center line along a straight course, diagonally from the curb, to the knowledge of defendant, was no notice or warning to defendant that plaintiff was approaching a position of danger from which he would be unable to extricate himself. His leftward diagonal movement toward the center was quite natural, necessary in getting from the curb (an appreciable distance from the pavement) over onto the paved southbound lane. That was no warning or notice to defendant that plaintiff would continue in that direction across the center line and into the northbound lane. Defendant was entitled to assume that plaintiff would observe traffic regulations, straighten out and run parallel to the center line and to the right of it when he reached it. . . .

''The doctrine of last clear chance 'should not be applied to the ordinary case in which the act creating the peril occurs practically simultaneously with the happening of the accident and in which neither party can fairly be said to have had a *last clear chance* thereafter to avoid the consequences.' (*Rodabaugh* v. *Tekus,* 39 Cal.2d 290, 295 [246 P.2d 663].)'' (See also *Mehling* v. *Zigman,* 116 Cal.App.2d 729 [254 P.2d 141]; *Johnson* v. *Southwestern Eng. Co.,* 41 Cal.App.2d 623 [107 P.2d 417]; *Jones* v. *Heinrich,* 49 Cal.App.2d 702 [122 P.2d

304] ; *Jobe* v. *Harold Livestock Com. Co.*, 113 Cal.App.2d 269 [247 P.2d 951].)

Applying the rules of these cases, it is obvious that we cannot say that, *as a matter of law,* either of the first two elements uncontrovertibly was shown to exist. For reasons already stated, there was a conflict on whether plaintiff was in a position of danger from which he could not extricate himself. That was clearly a factual problem. It is equally clear that we should not and cannot say, as a matter of law, that defendant knew or should have known that plaintiff was in a position of danger, or knew, or should have known that plaintiff could not escape. The evidence would support such a finding, but the jury found to the contrary. The evidence supports this implied finding of the jury. Assuming that defendant had the ability to stop his car *before* hitting plaintiff had he put on his brakes when he first saw plaintiff at the double white line, a fact itself not shown as a matter of law, the inferences from the evidence on the issue being in conflict, nevertheless, the evidence supports the conclusion that defendant had the right to proceed in the belief that plaintiff would exercise due care, and yield to defendant the right-of-way as provided in Vehicle Code, section 562, subdivision (a). Clearly, we cannot hold, as a matter of law, that the defendant had the actual knowledge of plaintiff's dangerous position required by the doctrine.

These conclusions make it unnecessary to discuss the other two elements of the last clear chance doctrine. Even if they did appear as a matter of law, and we think they did not; the conflict on the first two elements renders the issue a factual one. The case does not present any unusual factual situation. It is the normal case where the issue as to whether last clear chance applies was a factual one and for the jury to decide. This the jury did by finding, on proper instructions on the doctrine, that the doctrine was inapplicable.

■ The next point raised by plaintiff is equally untenable. It is urged that several members of the jury were guilty of prejudicial misconduct by taking written notes of the evidence and arguments made by members of the jury into the jury room during their deliberations on the verdict. The plaintiff's counsel requested the trial judge to prohibit the jurors from taking their notes into the jury room, but was unable to furnish any authority to support his request, and these notes were taken into the jury room.

This was not error. It is true that in a few out-of-state cases cited by plaintiff the practice of allowing jurors to take notes prepared by them into the jury room has been severely criticized, but, even in the absence of statute, in many states such practice is permissible. (See anno. 154 A.L.R. 878.)

Whatever the rule may be in other states, the problem is governed in California by section 612 of the Code of Civil Procedure, which provides: "Upon retiring for deliberation the jury may take with them all papers which have been received as evidence in the cause . . . and they may also take with them . . . notes of the testimony or other proceedings on the trial, taken by themselves or any of them, but none taken by any other person."

Plaintiff argues that here the notes taken by the jurors were not only of the evidence but also of arguments of counsel, and contends that section 612 does not refer to notes of arguments. But it does refer to "notes of . . . other proceedings on the trial," which obviously includes arguments. The code section is conclusive on this issue.

█ Plaintiff next complains of the giving of certain instructions. He first complains of the following instruction:

"It is the law in this state that if the plaintiff is guilty of the slightest amount of negligence proximately causing the accident, he cannot recover in this action, and this is true regardless of whether or not the defendant was negligent as charged.

"Stated in another way, the plaintiff cannot excuse any negligence on his part, found by you to have been a proximate cause of the accident, by claiming that the defendant was also negligent, or was more negligent than he was. If the plaintiff was guilty of any negligence, however slight, which was a proximate cause of the accident, your verdict must be against him."

Plaintiff complains of the words "slightest" and "slight" used in this instruction, and contends that this indicated to the jury that there are degrees of negligence in California.

█ It is of course the rule that: "The *formula* is not that any degree of negligence on the part of the plaintiff which directly concurs in producing the injury (however slight) will constitute a defense; but if the negligence of the plaintiff, which amounts to the absence of ordinary care, shall contribute, in any degree, proximately to the injury, the plaintiff shall not recover." (*Robinson* v. *Western Pac. R. R. Co.*, 48 Cal. 409, 422; see also *Strong* v. *Sacramento & Placerville*

*R. R. Co.,* 61 Cal. 326; *Rush* v. *Lagomarsino,* 196 Cal. 308 [237 P. 1066].)

 Taken in context the above instruction could not possibly have been misleading. Just before giving this instruction the trial court told the jury not to attempt to classify negligence into degrees, and told the jury not to determine whether the plaintiff or defendant was guilty of the greater degree of negligence. The trial judge also clearly, correctly and fully defined negligence as the absence of ordinary care.

 The instructions must, of course, be considered together. (*Westover* v. *City of Los Angeles,* 20 Cal.2d 635 [128 P.2d 350].) The court clearly and properly defined negligence and told the jury there were no degrees of negligence. The court told the jury that negligence—the want of ordinary care—must first be found, and, if so found, then no matter how "slight," if it proximately contributed to the accident, plaintiff could not recover. Thus, the criticized instruction, properly construed in context, was not erroneous. (See *Creamer* v. *Cerrato,* 1 Cal.App.2d 441 [36 P.2d 1094]; *Botti* v. *Savill,* 97 Cal.App. 524 [275 P. 1029].)

Plaintiff complains of the following instruction: "Where the evidence is as consistent with a neglect of duty or care on the part of the injured person as it is with a neglect of duty or care on the part of the person charged with causing the injury, the injured party cannot recover in an action for damages for the injury sustained, if any."

 It is contended that this instruction neglects to state that plaintiff's neglect of duty must be a proximate cause of the accident. But, again, plaintiff asks us to consider the instruction out of context. The above quoted instruction was only one of a group. The immediately preceding instruction clearly and unequivocally told the jury that contributory negligence, to be a defense, had to be a proximate cause of the accident. Proximate cause was clearly and correctly defined, as was the doctrine of last clear chance. It is impossible to believe that the jury could have been misled in the slightest degree by the instruction. (See *Sheldon* v. *James,* 175 Cal. 474 [166 P. 8, 2 A.L.R. 1493].)

 Plaintiff next complains of an instruction which states: "If you find that plaintiff, Joseph Ferner, had immediately prior to the accident in question been in a place of safety; that is, standing away from and clear of the path of defendant's automobile, and should you further find from the evidence that said plaintiff voluntarily left such place of

safety and placed himself in a place of danger in front of defendant's automobile, and further should you find that defendant had no knowledge that plaintiff was in such a position of danger, in time to avoid colliding with him by use of ordinary care, and that the voluntary act of the plaintiff was a proximate cause of the accident and either caused or contributed to the happening of the accident, then and in such event the plaintiff cannot recover, and you must find for the defendant.''

Plaintiff urges that there is no evidence that he was ever in a position of safety while on the highway. The instruction is ambiguous. If it was intended to imply that plaintiff was in a position of safety when he reached the double white line, it might be subject to some question, because under the rule announced in *Peterson* v. *Burkhalter*, 38 Cal.2d 107 [237 P.2d 977], the plaintiff, if his course was such as to place him in the line of impact with defendant's car, and was unaware of such, would then be in a position of danger. But the instruction does not state that plaintiff was in a position of safety when he reached the double white line. The instruction appears to be a general statement of a correct principle of law (*Doran* v. *City & County of San Francisco*, 44 Cal.2d 477 [283 P.2d 1]; *Chase* v. *Thomas*, 7 Cal.App.2d 440 [46 P.2d 200]), and finds support in the record in the evidence that before plaintiff started to cross the road he was in a position of safety. Certainly, the ambiguity in the instruction, if one exists, could not have been prejudicial.

The other instruction complained of was clearly a correct statement that contributory negligence of plaintiff, which was a proximate cause of the accident bars recovery.

The judgment and order appealed from are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.